535 S.E.2d 438

**Albert B. SHEALY, Petitioner,**

v.

**AIKEN COUNTY, Employer/Self–Insured, Respondent.**

No. 25173.

Supreme Court of South Carolina.

Heard June 21, 2000.

Decided July 24, 2000.

Rehearing Denied Sept. 7, 2000.

Preston F. McDaniel, of McDaniel Law Firm, of Columbia, for petitioner.

F. Earl Ellis, Jr., and Daniel W. Hayes, both of Ellis, Lawhorne & Sims, P.A., of Columbia, for respondent.

TOAL, Chief Justice:

Albert B. Shealy ("Shealy") appeals the Court of Appeals' decision denying workers' compensation benefits for his psy-

chological injuries allegedly caused by conditions of his employment as a "deep cover" undercover narcotics agent for the Aiken County Sheriff's Department ("Sheriff's Department").

## FACTS/PROCEDURAL BACKGROUND

From 1981 to 1990, Shealy worked as a Lexington County deputy sheriff. Shealy developed depression and an alcohol problem that ultimately led to his departure from the Lexington County Sheriff's Department in May 1990. He received treatment for these problems and was alcohol free in November 1990 when he applied for a position in the Sheriff's Department. In November 1990, Aiken County Sheriff Carroll Heath, who was aware of Shealy's alcohol problem, hired Shealy to work as a "deep cover" undercover narcotics agent.

The Sheriff's Department hires deep cover agents to go to known drug locations, typically bars and nightclubs, to befriend drug dealers and other criminals in order to gain information, intelligence, and make drug buys, which are handed over to the police as evidence. The goal is for the deep cover agent to buy as much drugs as he can from the dealers and then slowly disappear. Deep cover work is extremely stressful and differs from regular police undercover work because the agent does not wear a wire, is not operating under police surveillance, does not have access to police back up, and does not carry police identification. According to Shealy, the stress involved with deep cover work was "extraordinary, it was more than I ever could imagine."

In August 1992, the Sheriff's Department assigned Shealy to infiltrate Rambler's Bar and Grill in Aiken because the employees and management were accused of illegal drug trafficking. Another deep cover agent, Stacey Coleman ("Coleman"), informed Shealy that Tony Kneese ("Kneese"), one of the alleged drug dealers, suspected Shealy was an undercover officer. According to Coleman, Kneese planned on taking Shealy "fishing." "Fishing" is a slang term that means killing someone and then disposing of the body in a pond or lake. According to Coleman's testimony:

> The people were very well capable of committing a crime of murder. I know there were times he and I both purchased drugs from them and they were armed when we purchased

drugs from them. Yes, they were very well capable of committing [sic] such as that.

As a way to prove to Kneese that he was not a police officer, Shealy handed Kneese his pistol and told him to go ahead and kill him if he thought Shealy was a cop. Although Kneese did not harm Shealy, Shealy still felt he was under a constant death threat after the confrontation. Shealy was also unable to work effectively as a deep cover agent after the confrontation with Kneese. His condition worsened after the confrontation and he began seeing a psychiatrist, Dr. Carol O. Kinard.

Shortly after the encounter with Kneese, a new sheriff was elected for Aiken County. On Christmas Eve 1992, a representative from the Sheriff's Department informed Shealy that he would be terminated because the new sheriff intended to eliminate the deep cover narcotics program. According to Shealy, his dismissal was extremely stressful because he was still under death threats and he would lose both his permit to carry a weapon and the protection of law enforcement. On December 30, 1992, Shealy was admitted to Baptist Medical Center for depression, suicidal thoughts, post-traumatic stress disorder, and acute alcoholism.

Shealy has worked only sporadically since his release from Baptist Medical Center. He has been sober since July 1994, when he rejoined Alcoholics Anonymous. Dr. Kinard treated Shealy for several years and determined Shealy met the criteria for major depression recurrent, posttraumatic stress disorder, anxiety, alcoholism, and panic disorder with agoraphobia. In August 1995, Dr. Kinard indicated Shealy was unable to work in any gainful employment and would be unlikely to work in the foreseeable future. Dr. Scott, in performing an independent evaluation for the Social Security Administration, concurred in the diagnosis.

Although Shealy's job as a deep cover agent contributed to his medical conditions, Shealy admits to several other stressors in his life that may have contributed to his illness. In 1992, during the same time as the death threats and his termination from the Sheriff's Department, Shealy was also seeking a divorce from his second wife on the grounds of her infidelity, was in a bitter custody dispute over his son, and was declaring bankruptcy. Relying on these non-job stressors, the

Full Commission made a factual determination that Shealy failed to meet his burden of proving that the conditions of his employment as a deep cover agent proximately cause his psychological injuries.

The Single Commissioner awarded Shealy benefits for aggravation of his preexisting alcoholism and psychological injury resulting from the extraordinary conditions of his employment. The Full Commission reversed on October 15, 1996. After a remand to the Full Commission for specific findings of facts and conclusions of law, the circuit court affirmed the Full Commission's decision. The circuit court found Shealy's job conditions were usual to his employment. Moreover, the circuit court held Shealy had failed to prove his psychological injuries were caused by unusual or extraordinary conditions of employment. The Court of Appeals affirmed the circuit court's order. *Shealy v. Aiken County,* Op. No. 98–UP–573 (S.C.Ct.App. filed December 16, 1998).

The following issues are before this Court on appeal:

1. Did the Court of Appeals err in holding the "unusual or extraordinary conditions of employment" standard is determined by reference to Shealy's particular employment and not to employment in general?

2. Did the Court of Appeals err in finding Shealy's allegation of error in the reversal of the award for the aggravation of his preexisting alcoholism was not preserved for review?

3. Did the Court of Appeals err in holding that the issue of whether medical evidence had to be presented to prove unusual or extraordinary conditions of employment was not preserved for review?

## LAW/ANALYSIS

The Administrative Procedures Act ("APA") governs this Court's review of the Full Commission's decisions. *See Lark v. Bi–Lo, Inc.* 276 S.C. 130, 276 S.E.2d 304 (1981). We can reverse or modify the Full Commission's decision in this case only if Shealy's substantial rights have been prejudiced because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. *See* S.C.Code Ann. § 1–23–

380(A)(6)(d), (e) (Supp.1997). Substantial evidence is not a mere scintilla of evidence nor evidence viewed from one side, but such evidence, when the whole record is considered, as would allow reasonable minds to reach the conclusion the Full Commission reached. *Waters v. South Carolina Land Resources Conservation Comm'n,* 321 S.C. 219, 467 S.E.2d 913 (1996).

In workers' compensation cases, the Full Commission is the ultimate fact finder. *Hunter v. Patrick Constr. Co.,* 289 S.C. 46, 344 S.E.2d 613 (1986). The final determination of witness credibility and the weight to be accorded evidence is reserved to the Full Commission. *Ford v. Allied Chem. Co.,* 252 S.C. 561, 167 S.E.2d 564 (1969). It is not the task of this Court to weigh the evidence as found by the Full Commission. *Ellis v. Spartan Mills,* 276 S.C. 216, 277 S.E.2d 590 (1981).

## I. Unusual or Extraordinary Conditions of Employment

Shealy argues that under the standard for compensability that applies to mental-mental injuries,[1] the phrase "unusual or extraordinary conditions in employment" refers to conditions of employment in general, not to conditions extraordinary to the particular job in which the injury occurs. The Court of Appeals held compensability should be determined by unusual or extraordinary conditions of a complainant's employment. We agree with the Court of Appeals. However, we find the combination of death threats, gun incidents with violent drug dealers, high tension confrontations, fear of being uncovered, and loss of security as a police officer constitutes unusual or extraordinary conditions of employment when they occur over several months.

In determining whether a work-related injury is compensable, the Workers' Compensation Act is liberally construed toward the end of providing coverage rather than noncoverage in order to further the beneficial purposes for which it was designed. *Dickert v. Metropolitan Life Ins., Co.,* 306 S.C. 311, 411 S.E.2d 672 (Ct.App.1991). Any reasonable doubt as to the construction of the Act will be resolved in

---

1. A mental-mental injury is a purely mental injury resulting from emotional stimuli. *See Stokes v. First Nat'l Bank,* 306 S.C. 46, 410 S.E.2d 248 (1991).

456

favor of coverage. *Mauldin v. Dyna–Color/Jack Rabbit*, 308 S.C. 18, 416 S.E.2d 639 (1992). A compensable injury under the Workers' Compensation Act is defined by S.C.Code Ann. § 42–1–160 (1985),[2] which states in part:

"Injury" and "personal injury" shall mean only injury by accident arising out of and in the course of the employment and shall not include a disease in any form, except when it results naturally and unavoidably from the accident. . . .

▆▆▆▆▆ Mental or nervous disorders are compensable accidental injuries under the statute when "the emotional stimuli or stressors are incident to or arise from unusual or extraordinary conditions of employment." *Powell v. Vulcan Materials, Co.*, 299 S.C. 325, 384 S.E.2d 725 (1989). In *Powell*, this Court held that courts should use the "heart attack standard" to determine when a mental-mental injury is compensable. A heart attack suffered by an employee constitutes a compensable accident if it is induced by unexpected strain or overexertion in the performance of his duties of employment, or by unusual and extraordinary conditions in employment. *Bridges v. Housing Auth., City of Charleston*, 278 S.C. 342, 295 S.E.2d 872 (1982). However, if a heart attack results as a consequence of ordinary exertion that is required in performance of employment duties in an ordinary and usual manner, and without any untoward event, it is not compensable as an accident. *Fulmer v. South Carolina Elec. & Gas Co.*, 306 S.C. 34, 410 S.E.2d 25 (Ct.App.1991). According to this Court in *Powell*, the heart attack standard applies to mental-mental injuries:

---

**2.** On June 18, 1996, section 42–1–160 was amended. Shealy's injury occurred before the effective date of the amendment. The following two sections were added to the original statute:

Stress arising out of and in the course of employment unaccompanied by physical injury and resulting in mental illness or injury is not a personal injury unless it is established that the stressful employment conditions causing the mental injury were extraordinary and unusual in comparison to the normal conditions of the employment.

Stress arising out of and in the course of employment unaccompanied by physical injury is not considered compensable if it results from any event or series of events which is incidental to normal employer/employee relations including, but not limited to, personnel actions by the employer such as . . . terminations, except when these actions are taken in an extraordinary and unusual manner.

S.C.Code Ann. § 42–1–160 (Supp.1997).

Mental or nervous disorders resulting from either physical or emotional stimuli are equally compensable provided the emotional stimuli or stressors are incident to or arise from unusual or extraordinary conditions of employment.

*Powell,* 299 S.C. at 327, 384 S.E.2d at 726; *see also Stokes v. First Nat'l Bank,* 306 S.C. 46, 410 S.E.2d 248 (1991).

This Court has never applied an objective standard of reasonable employment when considering whether a worker was exposed to unusual or extraordinary work conditions, but rather has compared the conditions to the worker's particular employment. For example, in. *Powell* this Court held that "Powell's altercation with his supervisor was an unusual and extraordinary condition of *his* employment resulting in a compensable accidental injury." *Powell,* 299 S.C. at 328, 384 S.E.2d at 727 (emphasis added). All the factors considered by this Court in *Powell* were based upon the claimant's particular employment, not as compared to objective examples of employment in general.[3]

Various states have applied different standards in determining whether a condition is unusual or extraordinary. Professor Arthur Larson identified three comparisons used by courts across the country that have specifically addressed this issue:

---

**3.** *Accord Stokes v. First Nat'l Bank,* 306 S.C. 46, 410 S.E.2d 248 (1991) (holding the prolonged increase in Stokes' work hours and his additional job responsibilities, as compared to his work hours and responsibilities prior to the merger, constituted unusual and extraordinary conditions of employment); *Bridges v. Housing Auth., City of Charleston,* 278 S.C. 342, 295 S.E.2d 872 (1982) (holding there was no showing of unusual or extraordinary conditions of employment where security patrolman engaged in an investigation of the type included in his duties during normal working hours and in his regular patrol area); *Black v. Barnwell County,* 243 S.C. 531, 134 S.E.2d 753 (1964) ("Whether climbing the stairs by the deceased on the occasion in question constituted an unusual or extraordinary exertion must be determined in the light of his usual and normal duties as jailor of Barnwell County."); *Fulmer v. South Carolina Elec. & Gas Co.,* 306 S.C. 34, 410 S.E.2d 25 (Ct.App.1991) (holding automobile mechanic's heart attack as a result of being unable to get a needed part from the parts handler was not compensable because it was not unusual or extraordinary for the mechanic to have difficulty in obtaining parts); *DeBruhl v. Kershaw County Sheriff's Dep't,* 303 S.C. 20, 397 S.E.2d 782 (Ct.App.1990) (holding there was no showing of unusual or extraordinary conditions of employment where the investigation of a night fatality was not unusual or unexpected for the Sheriff of Kershaw County).

(1) compare whether the work conditions were unusual to the employee's normal strains; (2) compare whether the work conditions were unusual compared to the strains of employment in general; or (3) compare whether the work conditions were unusual as compared to the everyday wear and tear of non-employment life. 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 44.05(4)(d)(i) (1999). According to Professor Larson, the most familiar application appears to be a comparison to the claimant's particular employment:

> It is quite possible that in many of the cases merely using the undefined term 'unusual' the courts intended to apply the familiar comparison with the employee's own normal working conditions. This is by far the most familiar meaning in the heart cases. At the same time, quite possibly many of the courts simply did not address their minds to the question of which comparison they were making.

Larson, § 44.05(4)(d)(i). Larson's analysis further supports the precedent established by South Carolina case law in applying the standard based upon the employment of a particular claimant.

 Although we agree with the standard applied by the Court of Appeals, we find there is substantial evidence in the record that indicates Shealy's work conditions during 1992 were unusual and extraordinary. Over several months in 1992, Shealy experienced death threats, gun incidents with violent drug dealers, high tension confrontations, fear of losing his cover, loss of security as a police officer, and loss of his insurance. Knowing that a specific plot has been developed for one's murder by people who are willing and able to commit such a crime is certainly extraordinary. Furthermore, to have knowledge of an imminent death threat and then be stripped of the protection of the Sheriff's Department constitutes an extraordinary condition of employment.

This case is analogous to *Kearse v. South Carolina Wildlife Resources Dep't*, 236 S.C. 540, 115 S.E.2d 183 (1960), where we held the activities of a game warden during the week or two preceding his stroke were sufficient to reasonably support a conclusion that the work conditions were unusual or extraordinary. Although some of the activities were of the nature

usually performed by the game warden, the combination of late hours, frigid weather, extreme exertion, and rough terrain, which continued uninterrupted over an unusual length of time, constituted unusual or extraordinary conditions. Likewise, gun incidents, death threats, high tension confrontations, and loss of police security may be typical of a deep cover narcotics agent, but the combination of these events over several months is extraordinary.

In order for Shealy to recover workers' compensation benefits, he must prove both: (1) that he was exposed to unusual and extraordinary conditions in his employment; and (2) that these unusual and extraordinary conditions were the proximate cause of his mental breakdown. *See generally Powell, supra; Gambrell v. Burleson,* 252 S.C. 98, 165 S.E.2d 622 (1969) (must prove causal connection between injury and subsequent condition in workers' compensation cases). The Full Commission made the factual determination that Shealy failed to meet the burden of proof because outside stressors unrelated to his work contributed to or caused his injuries. Shealy was suffering from financial problems that led to bankruptcy; marital problems, including a divorce and a custody battle over his son; memories of a gun fight and shooting a man during a previous employment; and the constant stress of fighting alcoholism. Based on these non-job stressors, we conclude there is substantial evidence in the record to support the Full Commission's finding

## II. Preservation Issues

Shealy argues the Full Commission erred in reversing the award for aggravation of his preexisting alcoholism. The Court of Appeals held that because the issue was not ruled on by the circuit court and no Rule 59(e), SCRCP motion was made, the issue was not preserved for appellate review. We agree.

The order of the trial court does not address whether the work conditions aggravated Shealy's alcoholism. In his order the trial judge addressed: (1) whether Shealy is entitled to compensation under the heart attack exception outlined in *Holley v. Owens Corning Fiberglas Corp.,* 301 S.C. 519, 392 S.E.2d 804 (Ct.App.1990); (2) whether the record contained

substantial evidence that the work conditions were unusual to Shealy's employment; and (3) whether Shealy proved his work conditions were the proximate cause of his injuries. The trial judge generally stated: "Inasmuch as it does not appear that the Commission made any errors of law, and it does appear that there is substantial evidence to support its findings, the order of the South Carolina Workers' Compensation Commission is affirmed."

 We agree with the Court of Appeals that the issue is not preserved because: (1) the trial judge's general ruling is insufficient to preserve the specific issue for appellate review; and (2) Shealy did not move to alter or amend the judgment pursuant to Rule 59(e), SCRCP. *See generally Jackson v. Speed*, 326 S.C. 289, 486 S.E.2d 750 (1997) (holding issue not preserved for appellate review where appellants failed to object to the cost issue either at the hearing or in their motion to alter or amend the order); *Noisette v. Ismail*, 304 S.C. 56, 403 S.E.2d 122 (1991) (holding that where a trial court does not explicitly rule on an argument raised, and appellant makes no Rule 59(e) motion to obtain a ruling, the appellate court may not address the issue).

Shealy also argues the Commission erred in holding that medical evidence must be presented to show unusual or extraordinary conditions of employment. This issue was not preserved for appellate review because it was not ruled upon by the trial court and no Rule 59(e), SCRCP motion was made. *See Jackson v. Speed, supra; Noisette v. Ismail, supra.* Furthermore, as noted by the Court of Appeals, the Commission did not hold that medical evidence was necessary to prove unusual and extraordinary conditions of employment, but merely that the medical evidence Shealy presented was not sufficient evidence to establish *causation*. According to the Commission:

> The Claimant here has provided insufficient medical evidence to prove unusual or extraordinary conditions in his employment at Aiken County *as the proximate cause of his current condition*. A review of the medical evidence shows the Claimant was admitted to Charter Rivers Hospital on February 4, 1989 and his admitting diagnosis was alcohol dependency, ruling out post-traumatic stress disorder. At

that point he reported a long history of alcohol abuse, alcohol intoxication, and sedative withdrawal. This evidence shows the Claimant's disorder pre-dated any admission for the same aliments in December 1992 and was not related to extraordinary stressors on the Aiken County job.

(Emphasis added).

## CONCLUSION

Based on the foregoing, we **AFFIRM** the Court of Appeals' decision as modified.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.