THE STATE OF SOUTH CAROLINA

THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Dorothy Green, Employee,       
Respondent,
 
 
 

v.

 
 
 
Frigidaire Home Products/American Yard Products, 
 Employer and Frigidaire Home Products, Carrier,       
Defendants,
Of whom, Frigidaire Home Products is the,       
Appellant.
 
 
 

Appeal From Richland County
J. Ernest Kinard, Jr., Circuit Court 
 Judge

Unpublished Opinion No. 2003-UP-521
Heard June 11, 2003  Filed September 
 2, 2003

AFFIRMED 

 
 
 
E. Ros Huff, Jr., of Columbia, for Appellant.
Stacey Tarte Meyer, of Columbia and Stephen B. Samuels, of 
 Lexington, for Respondent.
 
 
 

PER CURIAM:  Dorothy Green filed this Workers 
 Compensation claim, alleging she injured her knee when she fell while working 
 at Frigidaire Home Products (Frigidaire) in 1996.  Frigidaire denied the claim 
 and asserted it was not filed within two years of the accident as required by 
 South Carolina Code Annotated section 42-15-40 (Supp. 2002).  The commissioner 
 found she timely filed the claim, concluding she did not discover her compensable 
 injury until 1999.  The Appellate Panel of the Workers Compensation Commission 
 (the Full Commission) affirmed the decision of the commissioner and adopted 
 the commissioners order.  The circuit court affirmed the decision, finding 
 the claim was not barred by the statute of limitations.  We affirm. 
FACTUAL/PROCEDURAL BACKGROUND
On February 13, 1996, Green injured her right knee 
 while working at Frigidaire.  The following day, Green saw her family physician, 
 and he diagnosed her as having a contusion to the knee.  
When Green returned to work, Frigidaire 
 referred her to James Brunson, the plants physician.  On February 20, 1996, 
 Brunson diagnosed her as having a contusion to the knee.  
On March 19, 1996, after Greens pain continued, 
 Brunson referred Green to Orangeburg Orthopedic & Sports Medicine Clinic 
 (ORS) for examination.  
On March 22, 1996, Green saw Bernard Kirol, 
 a physician at ORS.  Kirol diagnosed her with patellofemoral syndrome, a condition 
 he told her would completely resolve with a few weeks of restricted activity.  
 Additionally, he referred Green for physical therapy for her knee.  Green attended 
 one session of therapy and was subsequently discharged due to non-attendance.  

Green testified after she finished her physical 
 therapy, her knee [felt] pretty good.  Additionally, she testified over the 
 next several months she had pain in her knee, reported the pain to her direct 
 supervisor, Shirley Gilford, and received pills from the on-site nurse.  Furthermore, 
 she testified she returned to her family physician approximately six times between 
 the end of 1998 and the beginning of 1999 for shots both in her hip and her 
 knee.  
On February 4, 1999, Green saw Kevin Nahigian, 
 an orthopedic surgeon.  He diagnosed her with Right knee pain and probable 
 lateral meniscal tear vs lateral synovial plica.  Following surgery, on March 
 3, 1999, Nahigian confirmed the diagnosis as a complex tear of the lateral meniscus, 
 as well as degenerative arthrosis in the knee.  
On July 2, 1999, Green filed a Form 50, request 
 for hearing, seeking a determination of compensability, payment of medical treatment, 
 and payment of temporary total disability.  In response, Frigidaire filed a 
 Form 51, asserting a general denial of the claim and asserting section 42-15-40 
 barred the claim.  
The commissioner ruled Green timely filed the claim 
 because Green did not discover she had a compensable injury until February 29, 
 1999, when Nahigian gave her the correct diagnosis.  Furthermore, he awarded 
 her temporary total compensation from February 19, 1999, through December 23, 
 1999; compensation for permanent partial loss of the use of her right leg; and 
 payment of all causally-related-medical treatment, including any future knee 
 replacement.  The Full Commission affirmed the commissioners decision and summarily 
 adopted his order.  The circuit court affirmed the decision of the Full Commission, 
 finding Green timely brought the claim pursuant to Mauldin v. Dyna-Color/Jack 
 Rabbit, 308 S.C. 18, 416 S.E.2d 639 (1992).  Frigidaire appeals.
LAW/ANALYSIS
I.          Jurisdiction of the Full Commission
As a threshold matter, Frigidaire argues the circuit 
 court erred in affirming the decision of the Full Commission because the Full 
 Commission lacked subject matter jurisdiction to hear the claim.  Frigidaire 
 supports its jurisdictional argument on its contention Green failed to file 
 her claim within the applicable statute of limitations.  
Frigidaires argument is without merit, as failure 
 to file a claim within the applicable statute of limitations is not a jurisdictional 
 defect.  McLendon v. South Carolina Dept. of Highways and Pub. Transp., 
 313 S.C. 525, 525-26, 443 S.E.2d 539, 540 (1994).  Furthermore, the Full Commission 
 had subject matter jurisdiction over the claim.
Subject matter jurisdiction is the power to hear 
 and determine cases of the general class to which the proceedings in question 
 belong.  Dove v. Gold Kist, Inc., 314 S.C. 235, 237-38, 442 S.E.2d 
 598, 600 (1994) (quoting Bank of Babylon v. Quirk, 472 A.2d 21, 22 (Conn. 
 1984)).  In South Carolina, [a]ll questions arising under the South Carolina 
 Workers Compensation Act . . . shall be determined by the Commission.  Labouseur 
 v. Harleysville Mut. Ins. Co., 298 S.C. 213, 215, 379 S.E.2d 291, 292 (Ct. 
 App. 1989) (quoting S.C. Code Ann. § 42-3-180 (1976)).  An injury is within 
 the exclusive jurisdiction of the Full Commission if it arises by accident out 
 of and in the course of employment.  Sabb v. South Carolina State Univ., 
 350 S.C. 416, 422, 567 S.E.2d 231, 234 (2002).
 The record indicates Green sustained an accidental 
 injury to her right knee while employed by Frigidaire.  The injury occurred 
 during working hours, on Frigidaires property, and in the course of Greens 
 work for Frigidaire. [1]   Thus, reviewing the uncontested 
 facts in the record, we conclude the Full Commission had subject matter jurisdiction 
 over Greens claim for the injury to her right knee. [2]   
II.          Factual Findings
Frigidaire argues the circuit court erred by ruling 
 sufficient evidence exists within the record to support the Full Commissions 
 finding Green did not discover her injury until February 29, 1999. We disagree.
Section 42-15-40 (Supp. 2002) provides 
 in pertinent part, The right to compensation . . . is barred unless a claim 
 is filed with the [Workers Compensation] [C]ommission within two years after 
 an accident . . . .  The statute of limitations on a workers compensation 
 claim does not begin to run until the claimant either knew or should have known 
 of a compensable injury.   Mauldin, 308 S.C. at 22, 416 S.E.2d at 641.  
 Whether a claimant knew or should have known a cause of action existed is a 
 question for the factfinder.  Johnston v. Bowen, 313 S.C. 61, 64, 437 
 S.E.2d 45, 47 (1993).
In workers compensation cases, the Full Commission is the 
 ultimate fact finder.  Shealy v. Aiken County, 341 S.C. 448, 455, 535 
 S.E.2d 438, 442 (2000).  The appellate court can reverse or modify the Full 
 Commissions decision only if the decision is affected by an error of law or 
 is clearly erroneous in view of the reliable, probative, and substantial evidence 
 on the whole record.  S.C. Code Ann. § 1-23-380(A)(6) (Supp. 2002).  Substantial 
 evidence is not a mere scintilla of evidence nor evidence viewed from one side, 
 but such evidence, when the whole record is considered, as would allow reasonable 
 minds to reach the conclusion the Full Commission reached.  Shealy, 
 341 S.C. at 455, 535 S.E.2d at 442.
The statute of limitations applicable 
 to workers compensation claims, like the Workers Compensation Act as a whole, 
 should be given liberal construction, and any reasonable doubts should be resolved 
 in favor of coverage.  Rogers v. Spartanburg Regl Med. Ctr., 328 S.C. 
 415, 418, 491 S.E.2d 708, 710 (Ct. App.1997).  
Green was initially diagnosed with a contusion 
 to the knee.  Subsequently, Brunson saw her and diagnosed her with a contusion 
 to the knee.  Eventually, he referred her to an orthopedic physician, Kirol.  
 Kirol diagnosed her as having patellofemoral syndrome, a condition he told her 
 would resolve itself within a few weeks.  
Green testified that after she saw Kirol, 
 her knee [felt] pretty good.  Over the course of the next several months, 
 Green explained she continued having pain in her knee and would inform her supervisor.  
 Her supervisor would send Green to the nurse, who would give . . . [her] some 
 pills.  Eventually, when Greens knee swell[ed] up so big, she saw Nahigian.  
 He diagnosed her as having a complex tear of the lateral meniscus as well as 
 significant degenerative arthrosis in the knee. 
The facts in this case are substantially 
 similar to the facts in Mauldin.  In Mauldin, the claimant injured 
 her knee in an accident at work.  Id. at 20, 416 S.E.2d at 640.  An emergency 
 room physician initially misdiagnosed her as having a medial collateral sprain.  
 Id. Subsequently, the claimant continued having knee problems.  Her physician 
 told her it was arthritis and kept her employer informed of the condition.  
 Two years later, an orthopedic surgeon diagnosed her with a torn medial meniscus.  
 Id.
On appeal, the supreme court held the claimant 
 timely filed her claim because evidence existed within the record to support 
 a finding the claimant was unaware she had a compensable injury until she was 
 correctly diagnosed.  Similarly, sufficient evidence exists within the record 
 to support the Full Commissions finding Green had no reason to believe her 
 claim existed until Nahigian diagnosed her in February of 1999.
Initially, the pain in Greens knee subsided, as 
 Kirol told her it would.  Subsequently, the pain returned.  However, Green kept 
 her supervisor aware of the problem and visited both Frigidaires on-site nurse 
 and her family physician.  The record does not reflect either of these physicians 
 believed Kirols diagnosis to be incorrect.  Rather, it was not until Green 
 saw Nahigian, in February of 1999, that a physician informed her the original 
 diagnosis was incorrect.
Viewing the evidence within the record in light 
 of our standard of review and Mauldin, sufficient evidence exists to 
 support the Full Commissions finding the statute of limitations did not begin 
 to run until Green was correctly diagnosed on February 29, 1999.  Because Green 
 did not discover her injury until February 29, 1999, when she filed her Form 
 50 on July 2, 1999, it was timely.
CONCLUSION
Based on the foregoing, the order of the 
 circuit court, affirming the decision of the Full Commission, is 
AFFIRMED.
HOWARD and BEATTY, JJ., and JEFFERSON, Acting Judge, 
 concur.

 
 
 [1] Although evidence exists within the record indicating Green subsequently 
 fell in Food Lion, injuring her back and left knee, evidence does not exist 
 within the record indicating this accident either contributed to or exacerbated 
 the injury to her right knee.  

 
 oMoreover, 
 the circuit court had appropriate appellate jurisdiction.  See S.C. 
 Code Ann. § 42-17-60 (Supp. 2002) ([E]ither party . . . may appeal from the 
 decision of the commission to the court of common pleas . . . .); Dove, 
 314 S.C. at 238, 442 S.E.2d at 600 (holding the statute grants the court of 
 common pleas throughout the state subject matter jurisdiction to hear appeals 
 from the Full Commission).