THIS OPINION HAS NO PRECEDENTIAL 
 VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT 
 AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH 
 CAROLINA
 In The Court of Appeals
 
 
 
 
 Walter McQueen, Respondent,
 
 
 

v.
 
 
 
 
 Staffmark, Inc. and Atlantic 
 Mutual Insurance Co., Appellants.
 
 
 

Appeal From Chesterfield 
 County
  J. Michael Baxley, Circuit 
 Court Judge

Unpublished Opinion 
 No. 2004-UP-495
 Submitted September 15, 2004 
  Filed September 30, 2004

REVERSED

 
 
 
 
 Stanford E. Lacy, Christian 
 Stegmaier, Collins & Lacy, of Columbia, for Appellants.
 Kenneth Ray Martin, Martin 
 Law Offices, of Cheraw, for Respondent.
 
 
 

PER 
 CURIAM: StaffMark, Inc. and Atlantic Mutual Insurance Company (collectively 
 StaffMark) appeal the circuit courts reversal of the Appellate Panel of the 
 Workers Compensation Commissions order denying claimant Walter McQueen compensation.  
 We reverse. 1  
FACTUAL AND PROCEDURAL 
 BACKGROUND
McQueen was hired by StaffMark, a 
 company that provides temporary employees to other businesses, around January 
 11, 1999.  He was assigned to the Wal-Mart Distribution Center, where he worked 
 as an order filler.  
David 
 Kessler, who had been McQueens StaffMark supervisor, testified by deposition 
 that soon after McQueen began working, the manager at Wal-Mart wanted McQueen 
 let go because of poor work performance.  On Monday, January 25, 1999, Kessler 
 informed McQueen that his assignment at Wal-Mart was complete, which is the 
 terminology StaffMark used rather than stating someones employment was terminated.  
 Kessler stated that he told McQueen to turn in all of his equipment.  He also 
 advised McQueen that if he went to the StaffMark office in Monroe, North Carolina, 
 that office might be able to find another job for him.  
Kessler 
 testified that about thirty minutes later, McQueen and his Wal-Mart supervisor 
 approached him.  The supervisor advised Kessler that McQueen had just told him 
 that McQueen had hurt his back.  In response to Kesslers questioning, McQueen 
 stated he had hurt his back during his Thursday shift, which was the last night 
 he had worked.  Kessler stated McQueens failure to notify his supervisor immediately 
 of the injury was in violation of StaffMarks policies.  He explained that he 
 had given copies of StaffMarks injury reports to the loss prevention office 
 and had requested that in case of an injury to a StaffMark employee when he 
 or the other StaffMark supervisor was not there, that the forms be filled out 
 and he or StaffMark employee Renee Haigler be called.  Kessler averred that 
 the first he heard of McQueens injury was after he had terminated McQueens 
 employment.  
In contrast 
 to Kesslers testimony, McQueen testified that immediately after he felt something 
 pop in his back, he went to Michael Reese, a supervisor for the Wal-Mart Distribution 
 Center and explained to him what happened.  The accident happened in the early 
 morning hours of Friday, January 22, 1999.  He finished working that night and 
 went home around 3:30 a.m.  He went back to work the afternoon of Monday, January 
 25, 1999.  As soon as he arrived at the Distribution Center, he spoke again 
 with Reese.  Reese took him to the StaffMark supervisor whom McQueen called 
 Mr. Mullins.  McQueen testified Mullins informed them, No, you dont have 
 to fill out an accident report on him cause Im gone (sic) let him go anyway.  
 McQueen related Mullins then told him to turn in his equipment.  McQueen maintained 
 he had told Mullins about his injury before Mullins terminated his employment.  
 
McQueen 
 had x-rays taken at Chesterfield General Hospital and sought treatment from 
 Dr. Thrailkill and the other doctors in that practice for four months until 
 he was released to return to work.  He stated the doctors referred him to a 
 specialist, but he did not see the specialist because he did not have the money 
 to pay for such a visit.  He is still bothered by the injury.  
McQueen 
 filed a claim for Workers Compensation benefits.  StaffMark denied the claim.  
 The single commissioner held McQueen had suffered a compensable injury and ordered 
 StaffMark to be responsible for all authorized medical treatment through the 
 date of maximum medical improvement.  The commissioner ruled any finding as 
 to permanent impairment or disability was premature, as McQueen had not yet 
 reached maximum medical improvement.  
The Appellate 
 Panel of the Workers Compensation Commission reversed the order of the single 
 commissioner.  It listed the inconsistencies between McQueens hearing testimony 
 and information he gave during his job application, doctors visits, and deposition 
 testimony.  It noted that Kessler, who had left StaffMarks employment and was 
 a military chaplain stationed in Germany, had no stake in the outcome of the 
 case.  It found Kessler to be the more credible witness and the one worthy of 
 belief while McQueens testimony was not worthy of belief because of his omissions 
 inconsistencies, and misrepresentations.  The Appellate Panel held, Looking 
 at the record as a whole, because claimants testimony is not worthy of belief, 
 and there is no other evidence of accident or injury, the commissions Order 
 should be reversed.
The circuit 
 court reversed the Appellate Panels decision, reinstated the single commissioners 
 order, and remanded the matter to the Appellate Panel for a determination of 
 the specific benefits due McQueen.  This appeal followed.    
STANDARD 
 OF REVIEW
The Administrative 
 Procedures Act establishes the standard of review for decisions by the South 
 Carolina Workers Compensation Commission.  Lark v. Bi-Lo, 276 S.C. 130, 
 135, 276 S.E.2d 304, 306 (1981).  This court can reverse or modify the Appellate 
 Panels decision only if the appellants substantial rights have been prejudiced 
 because the decision is affected by an error of law or is clearly erroneous 
 in view of the reliable, probative, and substantial evidence on the whole record.  
 Shealy v. Aiken County, 341 S.C. 448, 454, 535 S.E.2d 438, 442 (2000); 
 S.C. Code Ann. § 1-23-380(A)(6) (Supp. 2003).  Substantial evidence is not 
 a mere scintilla of evidence nor evidence viewed from one side, but such evidence, 
 when the whole record is considered, as would allow reasonable minds to reach 
 the conclusion the [Appellate Panel] reached.  Shealy, 341 S.C. at 455, 
 535 S.E.2d at 442.  The possibility of drawing two inconsistent conclusions 
 does not prevent the Appellate Panels conclusions from being supported by substantial 
 evidence.  Tiller v. Natl Health Care Ctr., 334 S.C. 333, 338, 513 S.E.2d 
 843, 845 (1999).
The Appellate 
 Panel is the ultimate fact finder in workers compensation cases and is not 
 bound by the single commissioners findings of fact.  Ross v. American Red 
 Cross, 298 S.C. 490, 492, 381 S.E.2d 728, 730 (1989).  The final determination 
 of witness credibility and the weight to be accorded evidence is reserved to 
 the [Appellate Panel].  It is not the task of this Court to weigh the evidence 
 as found by the [Appellate Panel].  Shealy, 341 S.C. at 455, 535 S.E.2d 
 at 442 (citations omitted).
DISCUSSION
StaffMark 
 argues the circuit court erred in reversing the decision of the Appellate Panel.  
 We agree.  
Kessler and 
 McQueen presented competing versions about how McQueen reported his injury.  
 McQueen stated he immediately told his Wal-Mart supervisor about the injury 
 when it occurred Friday morning and that he and the supervisor told the StaffMark 
 supervisor about the injury at the beginning of McQueens Monday shift, before 
 he was fired.  Kessler, on the other hand, testified that it was not until thirty 
 minutes after he fired McQueen that McQueen and the Wal-Mart supervisor approached 
 him to report the injury.  Furthermore, according to Kessler, the Wal-Mart supervisor 
 stated that McQueen had just told him about the injury.  
The Appellate 
 Panel found Kessler to be more credible as he was no longer employed by StaffMark 
 and thus had no stake in the matter.  The Panel further found McQueen to be 
 not worthy of belief.  It noted that while McQueen had listed on his employment 
 application at StaffMark that he had been employed by a trucking company in 
 Virginia for thirty years, he testified at the hearing that he had worked a 
 number of different places.  The Panel described how McQueen had been inconsistent 
 in his deposition and hearing testimony concerning previous workers compensation 
 claims.  Although he testified in his deposition that he had no prior workers 
 compensation claims, at the hearing he admitted to a claim in Virginia.  The 
 Panel noted that McQueen had been inconsistent regarding his symptoms, testifying 
 at the hearing that he had back pain with pain radiating down the right leg 
 only, while describing bilateral leg pain at his initial doctors visit.  The 
 Appellate Panel related how during McQueens hearing testimony he denied filing 
 workers compensation claims against a subsequent employer but recanted when 
 challenged and acknowledged two workers compensation claims against Powell 
 Manufacturing.  It noted that when McQueen sought treatment for the hand injury 
 that was the basis of his claim against Powell, he told the emergency room staff 
 that he had just been terminated.  He also told them he had consumed half a 
 pint of liquor.  At the hearing, he denied both of these statements.  
The Appellate 
 Panel found McQueens testimony was directly refuted by Kesslers and it was 
 not possible to believe both witnesses.  It concluded McQueens testimony was 
 not worthy of belief because of his omissions, inconsistencies, and misrepresentations.  
 
The circuit 
 court rejected the Appellate Panels determination of the credibility of the 
 witnesses.  It explained that the single commissioner had the opportunity to 
 observe McQueens testimony and demeanor and such opportunity allowed her to 
 accurately gauge his credibility.  On the other hand, the court noted, no one 
 had the opportunity to personally observe the demeanor of Kessler, who testified 
 by international telephone deposition, and thereby evaluate his credibility.  
 However, as stated above, issues of witness credibility are for the Appellate 
 Panel to decide, not for this court or the circuit court to decide.  See 
 Shealy v. Aiken County, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000).
The circuit 
 court found that objective medical findings in the file substantiated McQueens 
 claim of injury.  However, even in McQueens medical records, the only evidence 
 that he was injured while working for StaffMark was provided by McQueen himself 
 in his statements to the doctor.  The Appellate Panel acted within its authority 
 in discounting any statements by McQueen, whom it found to be not worthy of 
 belief.  Absent any statements or testimony from McQueen, the record is devoid 
 of any evidence of an injury by accident while McQueen was working for StaffMark, 
 as the Appellate Panel found.  Accordingly, we hold the circuit court erred 
 in reversing the decision of the Appellate Panel.   Thus, the order of the circuit 
 court is REVERSED and the decision of the Appellate Panel reinstated.  
REVERSED.
HEARN, C.J., and HUFF and KITTREDGE, 
 JJ., concur.
 

 
 1 We decide this case without oral argument pursuant 
 to Rule 215, SCACR.