THIS OPINION HAS NO PRECEDENTIAL VALUE

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Rayford Butler, Respondent,
 v.
 South Carolina Department of Education, Employer, State Accident Fund, Carrier, Appellant.
 
 
 

Appeal From Charleston County
 Kenneth G. Goode, Circuit Court Judge

Unpublished Opinion No. 2007-UP-226
Submitted May 1, 2007 Filed May 14, 2007

REVERSED

 
 
 
 Margaret M. Urbanic, of Charleston and Cynthia Polk, of Columbia, for Appellant.
 Nowell S. Lesser, of Charleston, for Respondent.
 
 
 

PER CURIAM: This is a workers compensation case.  Rayford Butler (Claimant) was injured on July 5, 2000 when he lifted a brake drum while working for the South Carolina Department of Education (the Department).  The single commissioner found 35% permanent partial disability to Claimants spine.  An appellate panel of the full commission affirmed and adopted the single commissioners order.  The circuit court affirmed the commission to the extent it found Claimant suffered a 35% permanent partial disability to his neck.  The circuit court reversed the commissions order to the extent no other compensable injury was found and remanded the case for a determination of the extent of additional permanent partial disability due to permanent injuries to Claimants lower back.  The Department appeals and we reverse.[1]
I.
After Claimants accident, he was treated by Southeastern Spine Institute for the following symptoms: low back pain radiating down his left leg to the foot, left neck pain that radiates in the left thumb and index finger, and numbness and pain in his left hand and forearm.  Claimant was initially treated by Dr. Jeffrey Wingate who prescribed physical therapy, epidural injections, and anti-inflammatory and muscle relaxing drugs.  Claimant also had a CT myelogram which revealed a L3-4 foraminal bulge as a result of an annular tear which displaces the L4 nerve root.  When Claimants symptoms persisted, Dr. Wingate referred Claimant to Dr. Leonard Forrest.  Dr. Forrest scheduled Claimant for a nerve conduction study.  The nerve conduction study, performed by Dr. Robert Richardson on April 6, 2001, showed no evidence of cervical or lumbar radiculopathy.  
A functional capacity evaluation conducted on October 4, 2001, revealed that the patient manifested some self-limiting behavior and it might be reasonable to allow him to work at a Light level for three hours per day, ramping up to an 8-hour per day as tolerated.  Further, it noted if allowed to work at the Sedentary level, it may be likely that he will be able to tolerate the 8-hour day.  
Claimant was seen by George Cogar, Ph.D., for a psychological evaluation on November 20, 2001.  Cogar opined that if Claimants sleep were improved that his depression and response to pain would improve.  He recommended a drug to help Claimant sleep.  Cogar saw Claimant several more times and, on April 10, 2002, noted, I would indicate he is at maximum psychological improvement and I will continue to see him prn.  
On May 13, 2002, Claimant was seen by Dr. Jeffrey Faaberg of the Crowfield Pain Center.  Dr. Faaberg found Claimant to be at MMI.  Specifically, regarding Claimants cervical spine, thoracic spine, and lumbar spine, he opined, Total whole person impairment . . . is therefore 20%.  Dr. Faaberg also added an additional 5% whole person impairment secondary to significant major depressive findings mentioned by George Cogar Ph.D. in his psychological evaluation.
On March 1, 2002, Dr. Forrest reported that Claimant was at MMI.  Dr. Forrest ascribed Claimant a 5% permanent impairment rating for his neck and a 5% permanent impairment rating for the low back.  The sum total is therefore a 10% permanent impairment rating for [Claimant].  Dr. Forrest also found that Claimant could work a sedentary level beginning at any time and do that on a full time basis.  On January 20, 2003, Dr. Forrest again stated, [Claimant] remains at maximum medical improvement as previously defined.  On August 25, 2003, Dr. Forrest found, there is no definite weakness in the extremities.  
On October 31, 2003, after Claimant complained of increased pain in his neck, upper back, and arms, Dr. Forrest suggested Claimant have a surgical evaluation.  In this regard, Dr. Donald Johnson saw Claimant on December 3, 2003 and recommended surgery.  On February 24, 2004, Claimant underwent a fusion at C6-7.  On June 3, 2004, Dr. Johnson stated, I do think in regards to his cervical spine [Claimant] has reached maximum medical improvement . . . he has sustained a 25% impairment to the whole person.  The June 3, 2004 report further noted, If [a CAT scan of Claimants lumbar spine] is normal I would place him at maximum medical improvement in regards to his lumbar spine also.  An August 18, 2004 addendum to the June 3, 2004 report by Dr. Johnson opines that a CT myelogram was conducted on June 14, 2004 and showed some degenerative changes at 4-5 with minimal stenosis.  Dr. Johnson then opined, I would continue to place him at maximum medical improvement and feel my note of June 3, 2004 is appropriate.  
On November 9, 2004, Claimant testified before the single commissioner that he continues to suffer from numbness in his left arm and hand; pain in his hips, legs, shoulders, neck and low back; headaches; and depression.  
The single commission ordered and an appellate panel of the commission affirmed that the Department pay Claimant permanent partial disability benefits equal to 35% to the spine at a compensation rate of $267.18.  The commission further found that Claimants injury is confined to his spine and no other body parts are compensable.  
The circuit court affirmed the commissions order to the extent it found Claimant sustained a 35% permanent partial disability to his neck.  The circuit court reversed, however, to the extent that it found no other compensable injury[.]  The circuit court found the commissions ruling of no other compensable injuries was not supported by the substantial evidence, and specifically noted the undisputed evidence that Claimant sustained permanent injuries to his low back.  Further, the circuit court determined the commission erred by: (1) considering only the medical evidence relating to Claimants neck injuries; (2) finding that Claimants injuries were confined to his spine; and (3) disregarding the significant permanent restrictions imposed by Dr. Forrest.  
II.
The Administrative Procedures Act establishes the standard of review for decisions by the South Carolina Workers Compensation Commission.  Lark v. Bi-Lo, Inc., 276 S.C. 130, 134-35, 276 S.E.2d 304, 306 (1981).  In workers compensation cases, the Full Commission is the ultimate fact finder.  Shealy v. Aiken County, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000).  This court reviews facts based on the substantial evidence standard.  Thompson v. S.C. Steel Erectors, 369 S.C. 606, 612, 632 S.E.2d 874, 877 (Ct. App. 2006).  Under the substantial evidence standard, the appellate court may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact.  S.C. Code Ann. § 1-23-380(A)(5) (Supp. 2006).  The appellate court may reverse or modify the Commissions decision only if the Claimants substantial rights have been prejudiced because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.  Id.  Substantial evidence is not a mere scintilla of evidence nor evidence viewed from one side, but such evidence, when the whole record is considered, as would allow reasonable minds to reach the conclusion the Full Commission reached.  Shealy, 341 S.C. at 455, 535 S.E.2d at 442.
 III.
The Department argues the circuit court incorrectly found that (1) the commissions award only applied to Claimants cervical spine and (2) that the commission only considered the medical evidence relating to Claimants neck injuries.  We agree.
In its order, the commission specifically stated, the Claimant suffered an admitted injury to his neck and back . . . .  The commission also noted Claimants testimony of shooting pain in his neck and back.  Moreover, the commission specifically awarded Claimant permanent partial disability benefits equal to 35% to the spine . . . .  (Emphasis added.)  The commission did not differentiate between Claimants neck and lower back.  The award for Claimants spine injury contemplates both his neck and lower backcontrary to the circuit courts finding. 
The commission referred to both Dr. Johnsons June 3, 2004 and August 18, 2004 reports, which were written after Claimants surgery.  As noted by the commission, on June 3 Dr. Johnson found Claimant to be at maximum medical improvement with a 25% whole person impairment rating.  The commission also stated that on August 18, Dr. Johnson found some degenerative changes but continued to opine Claimant was at MMI.  The August 18 report, which the commission clearly referred to in its order, states Claimant reached MMI and refers back to Dr. Johnsons June 3 report.  These reports, when read together, provide substantial evidence supporting the commissions finding.
IV.
The circuit court found the commission erred by failing to make any reference to the permanent work restrictions recommended for Claimant by Dr. Forrest in a questionnaire for Claimants Social Security hearing.  The Department argues the circuit court erred in making this finding.  We agree.  
The questionnaire and restrictions referred to by the circuit court were made by Dr. Forrest on December 18, 2003.  Dr. Johnsons finding of MMI was made several months later on June 3, 2004 and after Claimants surgery on February 24, 2004.  Therefore, the evidence supports the commissions findings.  The circuit court reweighed the evidence to come to a different findingan action not permitted by the standard of review.  
V.
The circuit court found the commission erred in finding Claimants injuries were confined to his spine and that no other injuries were compensable.  The Department argues the circuit court made findings outside the scope of review.  We agree.
The single commissioners order shows that the commission reviewed the medical evidence and found that Claimants only compensable injury was to his spine.  The order states that [t]he medical evidence supports a C5 injury with some radicular symptoms in the arm which comes from the neck injury.  Medical evidence does not demonstrate other injuries to the arms or legs.  
Although Claimant consistently reported pain and numbness in his upper and lower extremities, no doctor found these areas to be injured.  In fact, on August 25, 2003, Dr. Forrest found no definite weakness in the [Claimants] extremities.  As we read the medical evidence, the pain and numbness in Claimants extremities is a symptom of his spinal injury.  In any event, the record substantially supports the commissions finding.  The circuit court erred in conducting its own review of the evidence and concluding otherwise.  

 VI.
For the reasons stated above, we reverse the circuit court.
REVERSED.
HEARN, C.J., GOOLSBY and KITTREDGE, JJ., concur.

[1]  We decide this case without oral argument pursuant to Rule 215, SCACR.