THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Ericka L. Jones, Appellant,
 v.
 South Carolina Department of Social Services, Employer, and State Accident Fund, Carrier, Respondents.
 
 
 

Appeal From Charleston County
 J. C. Buddy Nicholson, Jr., Circuit Court Judge

Unpublished Opinion No.  2007-UP-243
Heard April 10, 2007  Filed May 22, 2007
REVERSED AND REMANDED

 
 
 
 Kevin B. Smith, of Charleston, for Appellant.
 Ajerenal Danley, Matthew C. Robertson and Cynthia Burns Polk, all of Columbia, for Respondent.
 
 
 

PER CURIAM:  This is a workers compensation case.  The claimant, Ericka L. Jones, alleged she suffered a mental-mental injury arising out of and in the course of her employment as a caseworker for the South Carolina Department of Social Services (DSS).  The single commissioner denied the claim, finding the greater weight of the evidence did not support a finding that Joness emotional condition arose out of and in the course of her employment.  The appellate panel and circuit court affirmed the single commissioners order.  Jones appeals to this court.  We reverse and remand.
FACTS AND PROCEDURAL HISTORY
Jones was hired by DSS on July 31, 2000, as a Human Service Specialist II, commonly referred to as a caseworker.  Before working at DSS, Jones suffered from a neuromuscular disorder that caused physical problems; however, there is no evidence that she experienced any prior mental health or substance abuse problems or had received any mental health treatment.
 
One of the cases in which Jones was involved concerned a teenage girl who had been placed in foster care.  In September 2001, Jones initiated a pickup order for the girl after she ran away from her foster home.  Several months later, Jones met with the police, intending to give them information to help them locate the girl.  Instead, she learned the police had known of the girls whereabouts but had ignored the pick up order because they were investigating the murder of a drug dealer with whom the girl was allegedly involved.  Sadly, Jones also learned during the meeting that the girl had been found murdered on the railroad tracks in Lincolnville.
Jones maintains her mental problems began after she learned of the girls murder.  She initially attempted to deal with her anguish by discussing it with her mother and grandmother.  In July 2002, she began discussing the stress of her job with her family physician.
Shortly thereafter, Jones was assigned to work on a case involving a woman whose child was in the custody of DSS.  In August 2002, DSS received a fax stating the woman had made death threats against Jones and Joness mother.  Jones was frightened by the threat, prompting the DSS Office of Investigations to issue instructions that Jones was not to have any further contact with the woman.  Jones discussed this incident with her mother, her neurologist, and her family physician.
On December 9, 2002, Jones suffered a sudden and complete mental breakdown after being required to testify in court on some of her supervisors cases.  Notwithstanding the prior instructions that Jones was to avoid contact with the woman who had threatened her, the particular case involving that individual was included among the matters on which Jones was to appear.  Although the woman had not been served and the case was eventually continued for that reason, a DSS paralegal acknowledged that Jones was not made aware of the defect in service and that service or lack of it is usually not ascertained until the call of the corresponding case.  In addition, the DSS attorney was dissatisfied with the court treatment plan that was prepared by the supervisor on another case and became argumentative with Jones during her testimony.  This in turn, made Jones angry, defensive, and disgusted.  Further complicating matters, Joness pager went off in court alerting her to emergencies in two of her other cases.
 
As Jones was leaving the courtroom after the hearing, she began feeling weak, losing her vision, and dropping her files on the floor.  The following morning, her family took her to the emergency room at St. Francis Hospital.  On December 1, 2003, DSS terminated Joness employment in accordance with its attendance and leave policy.  Jones remains unable to work and under active psychiatric and psychological care.
On June 7, 2004, Jones applied for workers compensation benefits, alleging she sustained a mental-mental injury arising out of and in the course of her employment with DSS.  The State Accident Fund denied Jones sustained a compensable injury by accident.
The matter came before the single commissioner for a hearing on August 13, 2004.  By order dated December 3, 2004, the single commissioner found Jones failed to prove she was operating under unusual or extraordinary conditions of employment at any time during the course of her employment with the [DSS].  The single commissioner also stated the greater weight of the evidence does not support a finding that the claimants emotional condition arises out of and in the course of her employment with [DSS].
After a hearing on April 26, 2005, the appellate panel issued a summary order dated May 16, 2005, upholding and adopting the single commissioners order.  The circuit court heard Joness petition for judicial review on June 8, 2005, and, in a form order filed May 15, 2006, denied the appeal.[1]  This appeal follows.
STANDARD OF REVIEW
Although an appellate court may not substitute [its] judgment for that of the full commission as to the weight of the evidence on questions of fact, it may reverse where the decision is affected by an error of law.[2]  While the appellate courts are required to be deferential to the full commission regarding questions of fact, this deference does not prevent the courts from overturning the full commissions decision when it is legally incorrect.[3]
DISCUSSION
We agree with Joness argument that the commission committed an error of law in failing to consider the combined or cumulative effect of the series of unusual and extraordinary untoward events that led up to [her] mental breakdown.  In our view, Jones is entitled to a finding by the commission as to whether or not the combination of factors that she cited constituted an unusual or extraordinary condition of her employment, even though each of these factors, when considered individually, would arguably be an accepted hazard in her particular job.
A claimant can recover workers compensation benefits for mental or nervous disorders resulting from  emotional stimuli or stressors . . . incident to or aris[ing] from unusual or extraordinary conditions of employment. [4]  Notably, in Shealy v. Aiken County, the supreme court held various circumstances of the claimants work as a deep-cover narcotics agent, when combined over several months, could be unusual or extraordinary conditions notwithstanding that they may all be typical of the claimants employment.[5] 
 
In the present case, the record shows the issue of whether various stressors in Joness job, when considered together, caused her mental-mental injury was presented to both the single commissioner and the circuit court.  The single commissioners order, however, which is the only order in the record giving more than a summary treatment to the case, failed to address this issue and instead focused on whether each of the various events leading up to Joness injury was in itself unusual or extraordinary or could have been a proximate cause of her breakdown.[6]  That is to say, despite the assertions by Joness attorney at the hearings before both the single commissioner and the circuit court, no findings of fact were made regarding whether the combination of the events cited in this case, all of which took place within less than a year of each other, constituted an unusual or extraordinary condition of employment proximately causing Joness present condition.  
 
Based on the foregoing, we remand this matter to the commission for a determination of (1) whether the combination of the circumstances alleged to have caused Joness condition constituted an unusual or extraordinary condition of her employment; and (2) if so, whether the combination of these factors proximately caused her mental-mental injury.[7]  In making these determinations, the commission shall confine its review to the present record.
REVERSED AND REMANDED.
HEARN, C.J., and GOOLSBY and STILWELL, JJ., concur.

[1]  On May 22, 2006, Jones moved under Rule 60(b), SCRCP, for reconsideration and a written order.  This motion was denied, and judgment in the case was entered on June 20, 2006.
[2]  Grant v. Grant Textiles, 372 S.C. 196, ___, 641 S.E.2d 869, 871 (2007).
[3]  Id.  at 66.  Although the fact that the full commission issued only a summary order was not made an issue in the present appeal, we note that in Grant, the supreme court, citing section 1-23-350 of the South Carolina Code (2005) went on to reverse the full commission for its issuance of a conclusory order.  Id. at ___, 641 S.E.2d at 872.
[4]  Powell v. Vulcan Materials Co., 299 S.C. 325, 327, 384 S.E.2d 725, 726 (1989) (quoting Stokes v. First Natl Bank, 298 S.C. 13, 22, 377 S.E.2d 922, 927 (Ct. App. 1988)); see also S.C. Code Ann. § 42-1-160 (1976) (providing workers compensation coverage for [s]tress . . . unaccompanied by physical injury and resulting in mental illness or injury only if it is established that the stressful employment conditions causing the mental injury were extraordinary and unusual in comparison to the normal conditions of employment).
[5]  Shealy v. Aiken County, 341 S.C. 448, 459, 535 S.E.2d 438, 444 (2000).  
[6]  Moreover, the single commissioners order, in evaluating the impact of several of the events on Joness emotional stability, appears to have ignored undisputed evidence that was proffered to explain why a particular occurrence was particularly stressful to her.  For example, although the single commissioner also found the greater weight of the credible evidence shows that the claimant was not chastised by the court on December 9, 2002, he did not call into question the evidence she presented that the DSS attorney became argumentative with her while she was testifying.  In fact, the single commissioner acknowledged that caseworkers are sometimes chastised by the attorney in the usual course of their employment.  Similarly, the single commissioner, while appearing to find it significant that Jones was not the case manager responsible for the foster child who was later found murdered and had only limited contact with the girl, nevertheless acknowledged that it was Jones who initiated the pickup order that the police ignored.  Finally, although the single commissioner may have been technically correct that Jones had sufficient information that the woman who had threatened her most probably would not be in court when Jones was scheduled to testify, it appears undisputed that Jones could not have been completely certain that she would not have to confront the woman until the call of the case.
[7]  See Sigmon v. Dayco Corp., 316 S.C. 260, 262-63, 449 S.E.2d 497, 498-99 (Ct. App. 1994) (remanding the matter to the commission for findings of fact concerning the cause of the claimants workplace injury and noting [o]nly the commission is authorized to make such findings of fact).