748 S.E.2d 76

**Emma HAMILTON, Employee, Appellant,**

**v.**

**MARTIN COLOR–FI, INC., Employer, and Liberty Mutual Insurance Company, Carrier, Respondents.**

**Appellate Case No. 2012–210487.**

**No. 5144.**

Court of Appeals of South Carolina.

Heard May 9, 2013.
Decided June 19, 2013.
Rehearing Denied Sept. 27, 2013.

480

Joseph T. McElveen, Jr., of Bahnmuller Goldman McElveen Ford Bultman & Rodriguez, PA, of Sumter, for Appellant.

Candace G. Hindersman, of Willson Jones Carter & Baxley, P.A., of Columbia, for Respondents.

KONDUROS, J.

Emma Hamilton appeals the order of the Workers' Compensation Commission's Appellate Panel (Appellate Panel) arguing the Appellate Panel erred in finding (1) her employer terminated temporary total disability benefits in compliance with statutory requirements, (2) she had reached maximum medical improvement (MMI), (3) she received the necessary medical treatment to lessen her period of disability, (4) she was not a credible witness, and (5) the award for permanent partial disability to her arm was appropriate. We affirm.

## FACTS/PROCEDURAL HISTORY

Emma Hamilton worked as a machine operator for Martin Color–Fi, Inc. in Sumter, South Carolina. On July 22, 2008, she was injured at work when her right hand and forearm were caught in rollers and "crushed." She went to Tuomey Hospital Emergency Room and was treated for pain. The next day she began treatment with an orthopedist, Dr. James Gee. She continued to experience intermittent pain and weakness but Dr. Gee noted steady improvement. He ordered a nerve conduction study on October 22, 2008 because of her continued complaints. On November 26, 2008, Hamilton had

an MRI of her wrist. Dr. Gee explained to Hamilton both tests came back essentially normal and she would improve over time.

Dr. Gee referred Hamilton to Dr. Michael Green, a hand specialist. Dr. Green believed she was at MMI and assigned her a 2% permanent disability rating, which he later changed to a 1% rating. At Dr. Green's suggestion, the insurance carrier authorized work hardening. This was discontinued because Hamilton continued to report pain in her hand and wrist. Dr. Gee advised her time would be the best cure and she needed to work on strengthening her hand herself.

Dr. Blake Moore conducted an independent medical evaluation (IME) of Hamilton on June 1, 2009. He stated she had not yet achieved MMI and would benefit from further treatment potentially, including surgery. He gave her a 7% whole person impairment rating.

Dr. Gee referred her to a hand specialist, Dr. David Fulton, for another IME on June 30, 2010. He placed Hamilton at MMI stating he saw no need to continue medical treatment and no permanent impairment.

Hamilton worked light duty at Martin Color–Fi until she was laid off in December 2008. She testified she does light chores around the house and has not looked for another job since she was laid off.

On October 12, 2010, Martin Color–Fi and its carrier, Liberty Mutual Insurance Company (collectively, Respondents), filed a Form 21 with the Workers' Compensation Commission requesting a stop payment of temporary compensation because Hamilton had reached MMI. They further requested to pay the permanent disability amount and to receive a credit for overpayment of temporary compensation. Hamilton filed a Form 50 on November 22, 2010, asking for additional treatment. Respondents filed a Form 51, denying the need for additional medical treatment.

A hearing was held on December 15, 2010, in front of a single commissioner. He set forth an order declaring Hamilton had reached MMI, she was entitled to 10% permanent partial disability, and Respondents were entitled to a stop payment of temporary total compensation as of June 30, 2010.

He calculated her total compensation at $7,575.70. He found Respondents were entitled to a credit for overpayment against the award for permanent partial disability from that date in the amount of $11,019.20. Hamilton appealed to the Appellate Panel, which affirmed in full. This appeal followed.

## STANDARD OF REVIEW

■ The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions by the Appellate Panel. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). Under the scope of review established in the APA, this court may not substitute its judgment for that of the Appellate Panel as to the weight of the evidence on questions of fact, but may reverse when the decision is affected by an error of law. *Stone v. Traylor Bros., Inc.*, 360 S.C. 271, 274, 600 S.E.2d 551, 552 (Ct.App. 2004).

■ The substantial evidence rule governs the standard of review in a workers' compensation decision. *Frame v. Resort Servs. Inc.*, 357 S.C. 520, 527, 593 S.E.2d 491, 494 (Ct.App. 2004).

"Substantial evidence" is not a mere scintilla of evidence . . . [but] is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached. . . .

*Lark*, 276 S.C. at 135, 276 S.E.2d at 306.

## LAW/ANALYSIS

### I. Stop Payment

■ Hamilton argues the Appellate Panel erred in finding she reached MMI on June 30, 2010, because her authorized health care provider did not report she reached MMI. She asserts only Drs. Green and Fulton, her IME doctors, stated she was at MMI. We disagree.

The relevant South Carolina Regulation states:

After the one hundred fifty day period, when the claimant is receiving temporary compensation and the authorized health care provider reports the claimant has reached maximum medical improvement, the employer's representative

shall continue payment of temporary compensation until the Commission finds the employer's representative may terminate compensation unless compensation has been suspended according to R.67–505.

S.C.Code Ann. Regs. 67–506(B) (2012).

The record contains substantial evidence Hamilton's authorized health care provider found she had reached MMI. The Appellate Panel found Dr. Gee placed Hamilton at MMI in a report dated May 27, 2009. Dr. Gee is Hamilton's authorized health care of provider. His report specifically states "at some point between February 25, 2009 and March 25, 2009, [he] felt she reached maximum medical benefits as far as active orthopedic care was concerned." Additionally, Dr. Green placed Hamilton at MMI on February 11, 2009. Dr. Fulton found she reached MMI when he saw her on June 30, 2010. The Appellate Panel determined Hamilton reached MMI on June 30, 2010.

Nowhere does Reg. 67–506(B) require the date the authorized health care provider gives for the patient's MMI match the date given by the Appellate Panel. Nor does it state the Appellate Panel is barred from considering MMI dates offered by other physicians. *Id.* Here, Hamilton's authorized health care provider determined she reached MMI before the date the Appellate Panel chose. Other doctors placed her at MMI around the same time as her authorized provider or on the same date the Appellate Panel found. Accordingly, we affirm the Appellate Panel's decision.

## II. MMI

Hamilton contends the Appellate Panel erred in finding she had reached MMI because Drs. Green, Fulton, and Gee either did not find she was at MMI or their findings were unsupported by evidence. Hamilton maintains Dr. Green's recommendation of work hardening contradicts a finding of MMI. She asserts because Dr. Fulton did not use the term "maximum medical improvement," his report is not adequate. Likewise, Hamilton questions Dr. Gee's finding of MMI because he also suggested work hardening. We disagree.

MMI "is a term used to indicate that a person has reached such a plateau that in the physician's opinion there is

no further medical care or treatment which will lessen the degree of impairment." *O'Banner v. Westinghouse Elec. Corp.,* 319 S.C. 24, 28, 459 S.E.2d 324, 327 (Ct.App.1995). MMI is a factual determination made by the Appellate Panel that will be upheld unless not supported by substantial evidence.

"[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Palmetto Alliance, Inc. v. S.C. Pub. Serv. Comm'n,* 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984). When the evidence is conflicting over a factual issue, the findings of the Appellate Panel are conclusive. *Hargrove v. Titan Textile Co.,* 360 S.C. 276, 290, 599 S.E.2d 604, 611 (Ct.App.2004). In workers' compensation cases, the Appellate Panel is the ultimate finder of fact. *Shealy v. Aiken Cnty.,* 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000). The final determination of witness credibility and the weight to be accorded evidence is reserved to the Appellate Panel. *Bass v. Kenco Grp.,* 366 S.C. 450, 458, 622 S.E.2d 577, 581 (Ct.App.2005).

The Appellate Panel found Drs. Green, Fulton, and Gee all determined at some point Hamilton was at MMI. The record contains substantial evidence to support these findings. Dr. Green believed work hardening could increase her strength in the injured hand and she had reached maximum medical benefits with regard to motion. He stated she could work unrestricted activities. Dr. Fulton determined she could work without restriction and no further treatment was medically necessary. As previously discussed, Dr. Gee reported that Hamilton reached MMI sometime between February and March 2008.

Hamilton also questions the decision of the Appellate Panel to give more weight to the findings of Drs. Green and Fulton than Dr. Moore and the Appellate Panel's finding she was at MMI when Dr. Moore stated she had not reached MMI yet. She claims his report is the most thorough and should, therefore, be given more deference.

The regulations do not forbid the assignment of more or less weight to different reports. Hamilton does not deny that Drs. Green and Fulton are "hand specialists"; she only asks

the Appellate Panel be stopped from giving their opinions more weight. Nothing suggests the Appellate Panel over-reached in giving more credence to the reports of more specialized physicians.

South Carolina jurisprudence makes clear the Appellate Panel determines the weight of the evidence. The Appellate Panel had all four doctors' reports available to them and decided the reports of Drs. Green, Fulton, and Gee were more convincing than Dr. Moore's. Nothing in the record suggests this determination was beyond their scope or flawed. The Appellate Panel makes the final determination on credibility. Accordingly, the Appellate Panel did not err in finding Hamilton had reached MMI.

### III. Necessary Medical Treatment

■ Hamilton argues the Appellate Panel erred in finding she was not entitled to further medical treatment. She claims that while she saw four doctors to manage her injury, she was only treated by Dr. Gee, and she categorizes his care as minimal. Although he ordered a nerve conduction study and MRI of the wrist, Hamilton believes he ignored the findings of the tests. In his report, Dr. Moore wrote surgery ought to be considered based on his reading of the MRI. Hamilton also points to the note found in the nerve conduction study requesting the neurologist "rule out other potential contributing factors." She posits this note restricted the neurologist to only eliminate other potential causes of her wrist problems rather than look for the underlying cause. We disagree.

Section 42–15–60 of the South Carolina Code outlines the employer's financial responsibilities to an employee receiving workers' compensation. It states:

The employer shall provide medical, surgical, hospital, and other treatment, including medical and surgical supplies as reasonably may be required, for a period not exceeding ten weeks from the date of an injury, to effect a cure or give relief and for an additional time as in the judgment of the commission will tend to lessen the period of disability as evidenced by expert medical evidence stated to a reasonable degree of medical certainty. In addition to it, the original

artificial members as reasonably may be necessary must be provided by the employer.

S.C.Code Ann. § 42–15–60(A) (Supp.2012).

The record contains substantial evidence to support the Appellate Panel's finding Hamilton was not entitled to further medical treatment. Hamilton was seen and treated by Dr. Gee for over two years. Many of the notes from those visits indicate Dr. Gee believed time would be a major factor in her improvement. He did not pursue a more aggressive course because he reasoned usage of the wrist over time would produce a better result.

Further, substantial evidence indicates the MRI and nerve conduction studies were not ignored. Dr. Moore focused on the fact the MRI revealed "subtle sclerosis with increased signal and small subchondral cystic degenerative changes." However, Dr. Gee specifically states Hamilton's MRI was essentially normal. He and Dr. Fulton also found the nerve conduction study results were normal. Drs. Green, Fulton, and Gee all agreed she would not benefit from further medical treatment. Dr. Gee, as the authorized treating physician, completed a Form 14B stating he believed within a reasonable degree of medical certainty Hamilton did not require more treatment. Dr. Moore's report conflicted with the other recommendations; however, the Appellate Panel had access to all the reports and determined medical care should be stopped. Accordingly, the Appellate Panel did not err in ordering medical care be stopped.

## IV. Hamilton's Credibility

 Hamilton contends the Appellate Panel erred in finding her uncredible. She maintains the Appellate Panel has no cause to question her credibility. She argues the mere attempt to use a post hole digger was held against her. We disagree.

The final determination of witness credibility and the weight to be accorded evidence is reserved to the Appellate Panel. *Shealy v. Aiken Cnty.*, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000) (citing *Ford v. Allied Chem. Corp.*, 252 S.C. 561, 167 S.E.2d 564 (1969)). It is not the task of an appellate court to weigh the evidence as found by the Appellate Panel.

*Anderson v. Baptist Med. Ctr.*, 343 S.C. 487, 494–95, 541 S.E.2d 526, 529 (2001).

The Appellate Panel was in the best position to gauge the credibility of a witness because they saw and talked with her. No other evidence in the record points to Hamilton's credibility, however this court differentiates between the use and the attempted use of a post hole digger. Therefore, the Appellate Panel did not err in finding her uncredible.

## IV. 10% Permanent Partial Disability

■■■■ Hamilton contends the Appellate Panel erred in determining her disability to be 10% and requests a greater award of partial disability. She does not attempt to show a loss of earning capacity. Hamilton does state that the doctor's impairment rating is unreliable. She points to Dr. Greene's initially stating she suffered a 2% permanent impairment to her right arm and later changing it to 1%. We disagree.

The only injury Hamilton sustained was to her right arm. Therefore, she is eligible to receive permanent partial disability under section 42–9–30(13) which grants "for the loss of an arm, sixty-six and two-thirds percent of the average weekly wages during two hundred twenty weeks." S.C.Code Ann. § 42–9–30(13) (Supp.2012). To come under the statute, a claimant must show an injury and a loss of earning capacity. *Bass v. Kenco Grp.*, 366 S.C. 450, 460–61, 622 S.E.2d 577, 582 (Ct.App.2005).

■■■■ "[T]he extent of an injured workman's disability is a question of fact for determination by the [Appellate Panel] and will not be reversed if it is supported by competent evidence." *Colvin v. E.I. Du Pont De Nemours Co.*, 227 S.C. 465, 473, 88 S.E.2d 581, 585 (1955).

In this case, Dr. Green assigned Hamilton an impairment rating in her right arm of 2%, which was later changed to 1%. Dr. Fulton stated he saw no permanent partial impairment of her right arm. Dr. Fulton gave her a 7% whole person rating. Hamilton does not point to any facts other than Dr. Fulton's recommendation in support of her contention her disability percentage should be higher. The opinions submitted by the two other doctors support the determination of the Appellate

Panel. Therefore, sufficient evidence justified the Appellate Panel's finding of 10% permanent disability.

## CONCLUSION

Based on the foregoing, the Appellate Panel's decision is **AFFIRMED.**

HUFF and WILLIAMS, JJ., concur.