697 S.E.2d 641

**Dorothy HARGROVE, Appellant,**

**v.**

**CAROLINA ORTHOPAEDIC SURGERY ASSOCIATES, PA, Employer, and Hartford Fire Insurance Company, Respondents.**

**No. 4695.**

Court of Appeals of South Carolina.

Submitted Dec. 1, 2009.

Decided June 7, 2010.

120

Hyman S. Rubin, of Columbia, for Appellant.

James P. Newman, Jr., and Andrew E. Haselden, both of Columbia, for Respondents.

THOMAS, J.

This is an appeal of a workers' compensation case. The single commissioner denied benefits and medical treatment to Dorothy Hargrove based on his determination that Hargrove failed to (1) meet the statutory notice requirement and (2) prove that the problems from which she suffered resulted from a workplace accident. The appellate panel and the circuit court affirmed. We affirm as well.[1]

## FACTS AND PROCEDURAL HISTORY

Hargrove worked as a transcriptionist for Carolina Orthopaedic Surgery Associates, P.A., for over twenty years. Before working for Carolina Orthopaedic, she worked twenty years as a clerk and transcriptionist for the York County Hospital. She intended to retire in 2003, but delayed her retirement until the end of 2004 because an issue arose with the Social Security Administration about her correct date of birth.

In 2003, while Hargrove was at work, her chair hit a runner and turned over backwards, causing her to fall to the floor. Although no one saw her fall, two other employees heard a noise when Hargrove's chair fell over and they helped her get up. Hargrove was embarrassed, shaken up, and sore, but continued to work that day. Hargrove maintained she promptly reported the accident to Mary Elkins, her immediate supervisor. Elkins, however, denied hearing Hargrove say she had fallen.

Hargrove first took samples of Vioxx and Bextra given to her by a technician at the office, but later consulted Dr. W. Scott James, a physician with Carolina Orthopaedic, when the medications failed to relieve her pain. Before she saw Dr. James, Hargrove clocked out for her appointment, as she was

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

required to do if her problems were not work-related. Also, when she registered as a patient of Dr. James, Hargrove did not indicate her problems were work-related even though the form specifically requested this information.

Dr. James initially diagnosed Hargrove with bursitis; however, a subsequent M.R.I. revealed a moderate extruded disc fragment inferior to the L3–4, exerting "mass effect upon the right L4 nerve root," a central herniation at L–S1, and a concentric disc bulge from L1 through L3. Dr. James then referred Hargrove to Dr. Paul John Tsahakis, who performed a right L3–4 microendoscopic decompression. Shortly before her surgery, Hargrove applied for short-term disability benefits from Shenandoah Life Insurance Company. In addition to short-term disability, she also received five hundred sixty hours of donated sick time from other employees in the office. Several months later, Dr. Tsahakis found Hargrove reached maximum medical improvement with an impairment rating of ten percent. He also restricted her to working six hours per day.

In October 2004, Hargrove returned to work. Carolina Orthopaedic anticipated Hargrove would retire soon and had already hired someone to take her place full time; however, it assigned her tasks that students would normally perform. Hargrove continued to work until she retired at the end of 2004. By her own admission, Hargrove never told anybody that she intended to file for workers' compensation. Furthermore, according to Elkins, Hargrove indicated that her back pain resulted from having to care for her invalid brother. Elkins stated she first became aware that Hargrove was seeking workers' compensation benefits in April 2005, when Carolina Orthopaedic received a subpoena for Hargrove's medical records.

On August 8, 2005, Hargrove filed a Form 50, in which she stated the causative event took place September 1, 2003. In its Form 51, Carolina Orthopaedic alleged that Hargrove's claim "should be barred under § 42–15–20 [because] notice of injury was not given to the employer within ninety (90) days as required." In the form, Carolina Orthopaedic further stated it "reserves its right to assert any and all defenses

available and applicable ... as evidence may develop in the course of discovery."

The single commissioner heard the matter on September 12, 2006. By order dated and filed January 24, 2007, the single commissioner denied Hargrove's claim for benefits, finding (1) Hargrove failed to meet the statutory requirement regarding notice to the employer of a workplace injury and (2) even if she had met the notice requirement, she failed to prove her current complaints resulted from her alleged workplace accident. On May 18, 2007, the appellate panel affirmed the order of the single commissioner.

Hargrove petitioned the circuit court for judicial review of the matter. Following a hearing on September 5, 2007, the circuit court issued an order affirming the appellate panel. Hargrove unsuccessfully moved to alter or amend the judgment of the circuit court and then filed this appeal.

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act establishes the standard for judicial review of decisions of the South Carolina Workers' Compensation Commission. *Lark v. Bi-Lo,* 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981). "[N]either this court nor the circuit court may substitute its judgment for that of the agency as to the weight of the evidence on questions of fact but may reverse if the decision if affected by an error of law." *Lockridge v. Santens of Am.,* 344 S.C. 511, 515, 544 S.E.2d 842, 844 (Ct.App.2001).

## LAW/ANALYSIS

The decision to deny Hargrove workers' compensation benefits, in which all prior tribunals that have adjudicated this matter concurred, was based on two independent grounds: (1) Hargrove's failure to give Carolina Orthopaedic timely notice of her workplace accident and (2) her failure to prove the conditions for which she sought compensation resulted from the accident. If we affirm either of these grounds, we can also uphold the decision to deny workers' compensation benefits. *See Weeks v. McMillan,* 291 S.C. 287, 292, 353 S.E.2d 289, 292 (Ct.App.1987) ("Where a decision is based on alternative grounds, either of which independent of the other is sufficient

to support it, the decision will not be reversed even if one of the grounds is erroneous."). We base our affirmance of the denial of workers' compensation benefits on the finding that Hargrove failed to prove that the problems for which she sought workers' compensation benefits resulted from her accident.

### I. Form 51

Hargrove first argues that because Carolina Orthopaedic did not raise the issue of causation in its Form 51, it was unfair to deny her claim on that ground. We disagree.

 The South Carolina Administrative Regulations require an employer to "fully state its position and defenses, if any, replying to each specification in the [claimant's] Form 50 or Form 52." S.C.Code Regs. 67–603(B) (Supp.2009). Failure by the employer to file the appropriate form "shall be deemed a *general* denial of liability for the benefits claimed," resulting in the employer's forfeiture of "each special and affirmative defense allowed by the [South Carolina Workers' Compensation] Act." *Id.* 67–603C (emphasis added). An employer who has failed to respond to a claimant's workers' compensation action is therefore precluded only from raising affirmative defenses and may still deny liability. Likewise, we hold that an employer who has responded to a workers' compensation claim may assert a general denial of liability whether or not the response expressly contests compensability. *See Clade v. Champion Labs.*, 330 S.C. 8, 11, 496 S.E.2d 856, 857 (1998) ("The claimant has the burden of proving facts that will bring the injury within the workers' compensation law, and such award must not be based on surmise, conjecture or speculation."). Moreover, as we have noted in our narrative of the facts, Carolina Orthopaedic stated in its Form 51 that it reserved the right to assert any applicable defenses supported by evidence developed during discovery.

### II. Proximate cause

 Hargrove next contends the only reasonable conclusion from the competent evidence in the record was that her problems resulted from her accident on the job. We disagree.

Hargrove maintains that the "uninterrupted sequence of events leading inexorably from her fall to her ruptured disc to

her consequent surgery and permanent disability," along with her own testimony on causation, "constituted the only evidence in the record and the only plausible explanation for her problem." We disagree with this assertion. Regardless of what the medical evidence indicated, we cannot disregard the lay evidence on which the commission relied in finding Hargrove did not prove her problems resulted from her fall. *See Tiller v. Nat'l Health Care Ctr. of Sumter,* 334 S.C. 333, 340, 513 S.E.2d 843, 846 (1999) ("[W]hile medical testimony is entitled to great respect, the fact finder may disregard it if there is other competent evidence in the record."); *Ballenger v. S. Worsted Corp.,* 209 S.C. 463, 467, 40 S.E.2d 681, 682–83 (1946) ("Medical testimony should not be held to be conclusive, irrespective of other evidence. . . .").

Hargrove clocked out for her appointment with Dr. James even though she was informed this would not be necessary for treatment of a workplace injury. Dr. James appeared to have been unaware of Hargrove's contention that her problems occurred as a result of her fall until he received a report from Dr. Tsahakis recounting her version of the events. In addition, Hargrove had reported experiencing lower back pain from having to care for her incapacitated brother. Furthermore, when she applied for short-term disability benefits, Hargrove never indicated her disability resulted from an accident at work. Hargrove's behavior indicated she herself did not consider her injury to be work-related. We will not disturb the appellate panel's decision regarding the weight to be given this evidence.

III. References to social security and retirement benefits

Hargrove complains that evidence of her social security and retirement benefits were improperly considered in denying her claim for compensation. We find no error.

Hargrove argues correctly that procedures regarding retirement and social security benefits cannot be used as a basis for a deciding a workers' compensation claim. *See Stephenson v. Rice Servs.,* 314 S.C. 287, 289–90, 442 S.E.2d 627, 628 (Ct.App. 1994) (holding the commission cannot rely on a VA rating to find a claimant was totally disabled), *rev'd on other grounds,* 323 S.C. 113, 473 S.E.2d 699 (1996); *Solomon v. W.B. Easton, Inc.,* 307 S.C. 518, 521, 415 S.E.2d 841, 843 (Ct.App.1992) ("[A]wards and records of the Social Security Administration

ordinarily cannot be relied upon to support or deny a workers' compensation claim.").

■ We acknowledge that the single commissioner mentioned Hargrove's aborted attempt to retire in 2003 and the fact that she had also applied for social security benefits. These references to retirement and social security benefits were not for the purpose of justifying the decision to deny Hargrove's claim for workers' compensation benefits. Rather, they provided only additional explanation as to why Hargrove, as she readily admitted in her testimony, did not tell anyone she intended to file a workers' compensation claim.

## CONCLUSION

For the foregoing reasons, we uphold the finding that Hargrove failed to prove her medical problems resulted from a workplace injury. Because affirmance of this finding is sufficient to uphold the denial of workers' compensation benefits, we decline to address the merits of the commission's alternative finding that Hargrove failed to timely notify Carolina Orthopaedic of her accident.

AFFIRMED.

KONDUROS, J., and CURETON, A.J., concur.