762 S.E.2d 37

Patricia FORE, Employee, Appellant,

v.

GRIFFCO OF WAMPEE, INC., Employer, and
Chartis Claims, Inc., Carrier, Respondents.

Appellate Case No. 2012–212939.

No. 5242.

Court of Appeals of South Carolina.

Heard Feb. 5, 2014.

Decided June 30, 2014.

Rehearing Denied Aug. 25, 2014.

Stephen Benjamin Samuels, of Samuels Law Firm, LLC, and Peter P. Leventis, IV, of McKay Cauthen Settana & Stubley, PA, both of Columbia, for Appellant.

Weston Adams, III, and James H. Lichty, both of Columbia, and Helen Faith Hiser, of Mt. Pleasant, all of McAngus Goudelock & Courie, LLC, for Respondents.

THOMAS, J.

This is a workers' compensation case. The single commissioner awarded Patricia Fore compensation based on his finding that Fore's work-related injury resulted in a forty percent disability to the back. Fore appealed to the appellate panel, which affirmed the award. Fore now appeals to this court. We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

In 2005, Fore began working as a meat cutter in a Griffin IGA in Myrtle Beach. Her responsibilities included unloading trucks, rotating and cleaning coolers, and carrying items weighing forty to eighty pounds.

On February 21, 2008, Fore was injured when she bumped into some machinery while carrying about sixty pounds of meat. After March 31, 2008, Fore ceased working at IGA and moved to Leesburg, Georgia, with her husband.

After a hearing on August 12, 2009, a single commissioner found Fore suffered compensable injuries to her back and right hip and her back injury affected her right leg. Fore's employer, Griffco of Wampee, Inc., and its carrier, Chartis Claims, Inc. (collectively Respondents), were ordered to assume responsibility for all causally related treatment and to pay Fore temporary total disability commencing on March 31, 2008, Fore's final day of employment at IGA.

On May 19, 2010, Fore underwent a lumbar fusion. The surgery was not successful, resulting in a non-union and failed back syndrome. In August 2010, Dr. Wolgin, Fore's treating physician, after consulting with Fore's case manager, referred Fore to therapy and allowed her to perform sedentary work with restrictions regarding weightlifting and movement.

Fore commenced part-time work as a clerk for ABC Bail Bonds (ABC). In September, Fore told Dr. Wolgin she was working only three hours per day and three days per week in an "office setting"; however, she actually worked twenty or more hours per week for ABC. She also performed courier services for a towing service owned by Steve McGowan, the owner of ABC. McGowan paid Fore eight dollars per hour in cash for her work, and Fore never completed a time card in her own name.

By October 2010, Fore completed a month of physical therapy; however, her condition did not improve, and she reported increased pain in her hip and back from sleeping in a bed. As a result of these circumstances, Dr. Wolgin wrote a work slip in which he stated Fore was unable to work until further notice.

Fore left ABC on January 21, 2011, maintaining she could not perform her duties because of excessive pain from having to alternate between sitting and standing positions. McGowan, however, alleged Fore wanted to work more hours and even went to Atlanta to obtain her certification as a bail bond agent. According to McGowan, Fore increased her hours, eventually working thirty to thirty-five hours per week, and told him she was leaving ABC because she needed to earn more money to pay for her child's daycare.

Dr. Wolgin suggested additional surgery, but Fore declined this option for several reasons: her chance of improvement was only fifty percent, her prior surgery had been painful, and she was busy caring for a young child. After consulting both Fore and her attorney, Dr. Wolgin closed Fore's case on February 14, 2011, and declared she reached maximum medical improvement on that date. Dr. Wolgin also assigned Fore a thirty-six percent whole person impairment rating.

Sometime in February 2011, Fore was approached by Tony Owens, a longtime friend and the operator of A–1 Bail Bonding (A–1), one of ABC's competitors. Owens requested Fore's permission to use her name and license because she was well known in the community. Fore transferred her license to A-1 and completed one bond herself for A-1 to make the transfer effective. Fore also allowed Owens, at his expense, to place advertising for A-1 on the back window of her truck. The advertising included a telephone number for A-1 that could be called any time of the day.

In July 2011, Owens developed serious health problems and was unable to work. Fore claimed that because of Owens's difficulties, she agreed to complete a few bonds for A-1 without compensation until Owens could train someone else for the work. Fore was responsible for obtaining five bonds in July 2011, twelve bonds in August 2011, and one bond in September 2011. She maintained her only physical exertion in obtaining the bonds was to travel to the courthouse to sign for them. Eventually, Owens hired someone to do the work that Fore had been doing, and Fore assisted that person to obtain the necessary credentials.

On July 6, 2011, McGowan called the South Carolina Workers' Compensation Commission (the Commission) to report

that Fore was committing insurance fraud by working for A-1 and being paid "off the books." According to notes taken by Garry Smith, the Director of the Commission's Compliance Division, McGowan accused Fore of obtaining and serving bonds, which included traveling to the lockup in Leesburg to get her clients released. McGowan also alleged Fore took her niece with her, and he surmised the niece was initialing the release sheets as a subterfuge.

Smith included this information in a letter he wrote on July 18, 2011, to the Insurance Fraud Division of the Office of the South Carolina Attorney General. This letter was written on Commission letterhead and detailed Smith's conversation with McGowan. It also included notes about A-1 taken by an investigator for the Commission. Although acknowledging Chartis Claims, the carrier, was not an "authorized agency" entitled to receive information about the alleged fraud from the Commission, Smith wrote: "I suggest the carrier needs to know an allegation of fraud has been made so it can conduct an investigation, should it deem an investigation is warranted."

On July 20, 2011, an assistant deputy attorney general forwarded Smith's letter to Chartis for review and appropriate action along with a cover letter requesting Chartis to inform the South Carolina Attorney General's Office of any findings concerning insurance fraud. Neither Fore nor her attorney received copies of either the cover letter or Smith's letter.

On August 30, 2011, McGowan took video footage of Fore sitting with a client at the jail in Lee County, Georgia. This event prompted Fore to obtain a restraining order against McGowan.

The record on appeal also includes surveillance footage obtained on September 7 and 8, 2011. This footage shows (1) an A-1 sign near Fore's residence, (2) Fore entering, driving, and exiting an SUV without any noticeable difficulty, and (3) Fore squatting down numerous times to pick up merchandise from a low shelf in a department store. The record also includes a copy of Fore's Facebook page dated September 19, 2011, in which Fore gave her occupation as a "Professional Bondsman." She also described herself "Self Employed and Loving It!" and indicated her services were available.

On September 12, 2011, Vocational Consultant Glen Adams performed a vocational assessment on Fore based on Fore's medical records, work history, and statements she made during a telephone interview. In his report, Adams stated that based on Fore's limited sitting and standing tolerances, he considered Fore to be "totally vocationally disabled" as a result of the injuries she sustained while working at IGA. Adams also found there was no reasonably stable labor market compatible with Fore's vocational profile and resulting residual physical capacities.

On June 27, 2011, Fore filed a request for hearing with the Commission, in which she asked for a lump sum award to be prorated over her lifetime. Fore asserted she was totally and permanently disabled from her injury or, in the alternative, she had sustained a greater than fifty percent loss of use of her back, which would entitle her to a partial disability award based on five hundred weeks. On July 27, 2011, Respondents filed their answer to Fore's request. They admitted Fore was entitled to temporary total disability from the time she left her employment at IGA through the date she reached maximum medical improvement, but denied her 2008 injury caused a permanent and total disability.

On September 12, 2011, Fore served her Pre-hearing Brief and Notice of Witnesses. Respondents served their Pre-hearing Brief and Notice of Witnesses on September 19, 2011, including in their list of exhibits "[c]orrespondence from the S.C. Attorney General's Office." The following day, Fore served an amended Prehearing Brief and Notice of Witnesses, in which she added Owens, who was not listed on her earlier notice.

The single commissioner heard the matter on September 27, 2011. When the hearing began, Fore objected to Respondents' first exhibit, which contained both Smith's July 18, 2011 letter and the July 20, 2011 letter from the Attorney General's Office to Chartis. Fore argued this evidence was inadmissible as an *ex parte* communication and hearsay. She also contended the letters were inadmissible evidence of a pending criminal prosecution. In addition to asking the single commissioner to exclude the evidence, she requested that the entire South Carolina Workers' Compensation Commission be recused from

adjudicating her case and that a circuit court judge or other impartial referee, such as a former commissioner, be appointed to hear the matter. The single commissioner removed the letter from the Attorney General's Office from the record, but overruled Fore's objection to Smith's letter. He also denied Fore's request to appoint someone outside the Commission to hear her case.

The hearing then proceeded on the merits. When Fore called Owens to testify as a rebuttal witness on her behalf, Respondents objected, arguing that Owens was not named in Fore's original Pre-hearing Brief and Notice of Witnesses and that Fore's amended documents, which included Owens as a witness, were untimely. The single commissioner allowed Fore to proffer Owens as a witness, but left the hearing room when Owens testified.

On January 18, 2012, the single commissioner issued an order finding Fore's injury resulted in a forty percent disability to the back. The single commissioner noted he made this finding "[a]fter considering all of the evidence." He also stated he did not find Fore to be a credible witness and stated he believed she could work.

Based on his finding that Fore suffered a forty percent permanent partial disability to the back, the single commissioner granted Respondents a credit for overpayment of temporary total benefits from February 14, 2011, the date Fore reached MMI.

Fore appealed to the appellate panel, which affirmed the single commissioner's order, modifying it only to include additional findings of fact and conclusions of law that addressed Fore's allegations of *ex parte* communication. Fore now appeals to this court.

## ISSUES ON APPEAL[1]

I. Did the single commissioner and appellate panel err in failing to recuse themselves on the ground that the Commis-

---

1. Fore has also raised challenges to the decision to base Fore's final award on a finding that her injury resulted in a forty percent disability to her back and to an alleged procedural irregularity during the hearing before the appellate panel. We decline to address these questions in view of our disposition of the other issues Fore has raised in her appeal. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613,

sion engaged in improper *ex parte* contact with Respondents by instructing the Attorney General's Office to forward Smith's letter to Respondents without notifying Fore?

II. Should the single commissioner have excluded Smith's letter because it (1) constituted an *ex parte* communication, (2) contained inadmissible hearsay, (3) was more prejudicial than probative, and (4) denied Fore the opportunity to conduct meaningful discovery to rebut Respondents' evidence against her?

III. Should Fore have been allowed to call Owens as a rebuttal witness in response to the testimony of Steve McGowan?

## STANDARD OF REVIEW

Under the South Carolina Administrative Procedures Act, an appellate court can reverse or modify a decision of the South Carolina Workers' Compensation Commission "where the substantial rights of the appellant have been prejudiced because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence considering the record as a whole." *Trotter v. Trane Coil Facility*, 393 S.C. 637, 644, 714 S.E.2d 289, 293 (2011).

## LAW/ANALYSIS

I. Allegation of *Ex Parte* Communication and Recusal of the Commission

■  Fore first argues the Commission engaged in *ex parte* communication with McGowan and Chartis and, as result of these interactions, deprived her of a fair trial. She further maintains that all sitting commissioners should have been disqualified from hearing the matter because of the alleged *ex parte* communication. We disagree.

■  "[E]x *parte* communication is defined as 'prohibited communication between counsel and the court when opposing counsel is not present.'" *Brown v. Bi–Lo, Inc.*, 354 S.C. 436, 440 n. 3, 581 S.E.2d 836, 838 n. 3 (2003) (quoting *Black's Law Dictionary* 597 (7th Ed.1999)). The Code of Judicial Conduct

---

518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

prohibits a judge from initiating, permitting, or considering *ex parte* communications unless the judge takes certain precautions, including but not limited to notifying the other parties of the substance of the *ex parte* communication and giving them the opportunity to respond. Rule 501, SCACR, Canon 3(B)(7)(a)(ii).

According to Fore, the *ex parte* communication occurred when Smith, in his capacity as Director of the Compliance Division of the Commission, sent the information he received from McGowan to the South Carolina Attorney General's Office and included "explicit instructions to forward it to a party in this case." However, in contacting the Fraud Division of the Office of the South Carolina Attorney General about McGowan's accusations against Fore, Smith was only discharging duties required of the Commission by statute. *See* S.C.Code Ann. § 38–55–570(A) (2002) (requiring "any . . . authorized agency having reason to believe that another has made a false statement or misrepresentation" to "notify the Insurance Fraud Division of the Office of the Attorney General of the knowledge or belief and provide any additional information within his possession relative thereto"). Furthermore, contrary to Fore's version of the facts, Smith merely suggested that the carrier be made aware of McGowan's allegation and did not instruct the Attorney General to convey this information to Chartis. Finally, in making the suggestion, Smith was advising the Attorney General's Office of a course of action that it had a right to follow and never expressed a desire that the Attorney General take any action on the Commission's behalf. *See* S.C.Code Ann. § 38–55–580(D) (2002) (providing immunity for "persons identified as designated employees whose responsibilities include the investigation and disposition of claims related to suspected fraudulent insurance acts" when they share information about such acts with properly designated employees of "the same or other insurers whose responsibilities include the investigation and disposition of claims related to fraudulent insurance acts").

We therefore hold that Fore has not established that any *ex parte* communication occurred between Respondents and the Commission. Furthermore, because Fore's assertion of *ex parte* communication is the only ground she advanced to support her argument that the Commission should have re-

cused itself from hearing her claim, we need not address her argument that an independent hearing officer not currently affiliated with the Commission should have been appointed to decide this matter.[2]

## II. Inclusion of Smith's Letter in the Record

■ Fore also contends that Smith's letter should have been removed from the record before the single commissioner because it was an *ex parte* communication, contained inadmissible hearsay, was more prejudicial than probative, and was presented in such a way as to deprive Fore of the opportunity to conduct meaningful discovery. Although we have held the letter was not an *ex parte* communication, we agree with Fore that the letter should have been removed from the record because it contained hearsay and was unduly prejudicial to her. Furthermore, because of the nature of the communication, Fore was deprived of sufficient opportunity to investigate the evidence Respondents presented to support their position that she was capable of working.

When Fore objected to Smith's letter, Respondents' attorney argued the letter was "simply evidence that there is a fraud investigation ongoing by the A.G.'s office in this claim." The single commissioner agreed and denied Fore's motion to remove the letter from the record, stating the letter was "in the commission file" and had "been made a part of the record or will be made a part of the record."

■ The inclusion of Smith's letter among the materials before the single commissioner, however, whether this occurred before or during the hearing, was in violation of sections 38–55–510 through –590 of the South Carolina Code (2002), otherwise known as the Omnibus Insurance Fraud and Reporting Immunity Act. As to the availability of information about fraudulent insurance claims under investigation, the Act provides:

---

**2.** In any event, we found no authority to support Fore's argument that recusal of the Commission would have been the only appropriate remedy if she had established that the Commission engaged in *ex parte* communication with Chartis, and Fore has not cited any binding precedent to support her position.

Except as otherwise provided by law, any information furnished pursuant to this section *is privileged and shall not be part of any public record.* Any information or evidence furnished to an authorized agency pursuant to this section is not subject to subpoena or subpoena duces tecum in any civil or criminal proceeding unless, after reasonable notice to any person, insurer, or authorized agency which has an interest in the information and after a subsequent hearing, a court of competent jurisdiction determines that the public interest and any ongoing investigation will not be jeopardized by obedience of the subpoena or subpoena duces tecum.

S.C.Code Ann. § 38–55–570(D) (2002) (emphasis added). Therefore, although Smith's letter may have been part of the Commission's file, it should have been segregated from those portions of the file that could be viewed by members of the public.

We also agree with Fore that this letter was hearsay evidence of an as-yet unproven allegation that she had committed insurance fraud. Furthermore, without a final determination of the truth of this allegation, we hold the prejudice to Fore from admitting the letter exceeded any probative value to be gained from its inclusion in the record. *Cf. S.C. Dep't of Soc. Servs. v. Lisa C.,* 380 S.C. 406, 417, 669 S.E.2d 647, 653 (Ct.App.2008) (finding that testimony that law enforcement had probable cause to proceed with a criminal investigation against a parent was prejudicial because the evidence suggested the parent was guilty of sexual misconduct toward his child). Moreover, because the letter was most likely not accessible to Fore or any other member of the public and Fore was thus unaware of the letter until only eight days before her hearing, she was deprived of the opportunity to conduct meaningful discovery that may have enabled her to refute Respondent's allegations that her claims were spurious.

Considering all these circumstances, we hold the single commissioner should have granted Fore's request to remove Smith's letter from the record. We acknowledge there may have been substantial evidence to support a finding that Fore was capable of working and suffered only a partial disability; however, Fore's testimony about her condition, the work restrictions imposed by Dr. Wolgin, and the vocational assess-

ment prepared by Glen Adams would have been substantial evidence supporting a different finding. Fore's credibility, then, was an important factor, and the single commissioner expressly found Fore was not a credible witness. Contrary to a statement in the appellate panel's order that there was no evidence that the single commissioner considered Smith's letter in determining Fore's award, the single commissioner himself indicated otherwise when, after denying Fore's motion on the ground that the letter was already an exhibit in the commission file, he stated in his order that (1) his findings of fact were "[b]ased upon the testimony and exhibits submitted" and (2) he found Fore had suffered only a forty percent permanent partial disability to the back "[a]fter considering all of the evidence."

We therefore agree with Fore that the single commissioner's order was affected by an error of law because of the single commissioner's refusal to exclude from the record an exhibit that Respondents readily admitted was evidence of an ongoing fraud investigation. Nevertheless, "[t]he final determination of witness credibility and the weight to be accorded evidence is reserved to the Appellate Panel." *Hamilton v. Martin Color–Fi, Inc.*, 405 S.C. 478, 487, 748 S.E.2d 76, 81 (Ct.App.2013) (citing *Shealy v. Aiken Cnty.*, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000)). Here, although we disagree with the appellate panel's interpretation of the single commissioner's order, the appellate panel clearly stated in its own order that it "does not rely on any information contained in the letter from the Commission to the Attorney General." Considering this unequivocal statement along with Respondents' evidence that Fore was not permanently and totally disabled, we hold Fore failed to establish that her substantial rights were prejudiced as a result of either an error of law in the appellate panel's decision or clearly erroneous findings of fact by the appellate panel.

III. Testimony of Tony Owens

Fore further argues the single commissioner should not have refused to hear Owens's rebuttal testimony solely because he was not listed on her original Prehearing Brief and Notice of Witnesses and her attempt to amend these documents to include him was untimely. We agree.

State regulations require an attorney representing a party at a workers' compensation hearing to file and serve a Pre-hearing Brief (Form 58). 8 S.C.Code Ann. Regs. 67–611.B (2012). The attorney must "[f]ile a Form 58 and proof of service at least ten days before the hearing with the Hearing Commissioner's office identified on the hearing notice." 8 S.C.Code Ann. Regs. 67–611.B(1) (2012). The Form 58 must "give the names and addresses of persons known to the parties or counsel to be witnesses concerning the facts of the case . . . ." *Id.* Furthermore, a party must "promptly supplement a response with respect to any question directly addressed on the form and amend a response if the party obtains information upon the basis of which the party knows the response was incorrect when made . . . ." *Id.*

Fore served her original Pre-hearing Brief and Notice of Witnesses on September 12, 2011, more than ten days before the hearing on September 27, 2011. On September 20, 2011, the day she received Respondents' Pre-hearing Brief and Notice of Witnesses, Fore immediately filed and served her Amended Pre-hearing Brief and Notice. Regulation 67–611, though expressly imposing a deadline for filing and serving the Pre-hearing Brief, also requires parties to supplement their responses when warranted. This regulation, however, does not impose a deadline for disclosure of new information when that information is provided in an effort to amend a prior response. Absent any express time constraint for amending a Prehearing Brief, we hold that Fore, in promptly supplementing her Pre-hearing Brief to include Owens as a witness, complied with Regulation 67–611 and that the single commissioner erred in refusing to allow Fore to call Owens as a rebuttal witness. *See Lizee v. S.C. Dep't of Mental Health,* 367 S.C. 122, 130 n. 2, 623 S.E.2d 860, 864 n. 2 (Ct.App.2005) (recognizing "the informal nature of administrative proceedings before the Commission").

**CONCLUSION**

We hold the single commissioner should not have refused to hear Owens's rebuttal testimony and therefore remand this matter to the Commission for a redetermination of Fore's benefits with the directive that full consideration be given to Owens's testimony. We further hold the letter from Garry Smith to the Insurance Fraud Division of the Office of the

South Carolina Attorney General was not an *ex parte* communication between Respondents and the Commission and Fore is therefore not entitled to have an independent tribunal appointed to determine her benefits. Although we hold that Fore did not show prejudice from the single commissioner's refusal to remove Smith's letter from the record, we agree with Fore that this refusal was error. In view of our decision to remand the matter to allow Fore to call Owens as a rebuttal witness, then, we also direct that on remand Garry Smith's letter be removed from the record. If Smith's letter remains in the Commission's file, it shall be segregated from the publicly available portions of the file as required by subsection 38–55–570(D) of the South Carolina Code (2002).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HUFF and PIEPER, JJ., concur.