# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Chisolm Frampton, Employee, Appellant,

v.

S.C. Department of Natural Resources, Employer, and
S.C. State Accident Fund, Carrier, Respondents.

Appellate Case No. 2017-001764

---

Appeal From The Workers' Compensation Commission

---

Opinion No. 5726
Heard September 19, 2019 – Filed May 13, 2020
Withdrawn, Substituted and Refiled November 18, 2020

---

**AFFIRMED**

---

John C. Land, III, of Land Parker Welch, LLC, of
Manning, for Appellant.

Kirsten Leslie Barr, of Trask & Howell, LLC, of Mount
Pleasant, for Respondent.

---

**HILL, J.:** In this workers' compensation case, the single commissioner found
Chisolm Frampton failed to meet his burden of proof under S.C. Code Ann. §
42-9-35 (2015) to show his subsequent, on-the-job injury aggravated his preexisting
neck condition. Nevertheless, the single commissioner found because the
Department of Natural Resources (DNR) admitted the claim and provided medical
treatment, Frampton was entitled to benefits for a 20% permanent partial disability
to his spine. The appellate panel reversed, finding the single commissioner's
conclusion that Frampton did not meet his burden of proof under § 42-9-35 was

correct and, as an alternate ground for reversal, found because the finding was not appealed, it was the law of the case. The appellate panel therefore concluded Frampton was not entitled to benefits as a matter of law. Frampton now appeals the appellate panel's reversal of the single commissioner's award, arguing (1) the appellate panel erred in requiring him to prove a compensable injury to his spine after DNR admitted liability, and (2) the single commissioner erred by considering Frampton's return to work and subsequent promotions in determining his impairment rating. Because the appellate panel's decision is supported by substantial evidence, we affirm.

## I. Factual and Procedural Background

On September 4, 2010, Frampton experienced neck pain and stiffness after riding in a pickup truck across a bumpy dove field he and another DNR officer were inspecting. He reported the incident to his supervisor and went to Doctor's Care three days later. The notes from that visit indicated Frampton was diagnosed with cervical and trapezius strains and that workers' compensation paid for the visit. Frampton was released back to work the same day with the restriction of "no overhead lifting." He went back to Doctor's Care ten days later for a follow-up visit, after which he was released to work full duty.

On March 15, 2011, Frampton saw a neurosurgeon, Dr. Byron Bailey, who examined him for ongoing neck and arm pain. Frampton testified he was referred by workers' compensation to Dr. Bailey because his neck condition had not improved since the September 4, 2010 accident. Dr. Bailey's medical records, however, indicated he had treated Frampton before the dove field incident and was "following [Frampton] for cervical radiculopathy"[1] and described Frampton as having symptoms of neck pain and right arm numbness that had "progressed from the study that was done approximately a year ago." The next day, Frampton underwent a series of tests whereby Dr. Bailey determined he would require spinal surgery. Dr. Bailey performed a cervical discectomy and fusion on March 21, 2011, and continued to see Frampton for follow-up visits. Frampton returned to work on May 1, 2011, but was restricted to light duty for another several weeks.

---

[1]"Cervical radiculopathy is a disease process marked by nerve compression from herniated disk material or arthritic bone spurs. This impingement typically produces neck and radiating arm pain or numbness, sensory deficits, or motor dysfunction in the neck and upper extremities." Eubanks, *Cervical Radiculopathy: Nonoperative Management of Neck Pain and Radicular Symptoms*, 81 American Family Physician 33 (2010).

In June 2011, Frampton was involved in a serious car accident. He saw Dr. Bailey soon after for a previously scheduled appointment and reported experiencing aggravation of his neck pain. Dr. Bailey determined Frampton likely developed a cervical strain as a result of the car accident and prescribed a number of medications and physical therapy. Frampton continued to see Dr. Bailey periodically for neck pain.

On September 20, 2013, Dr. Bailey completed a Form 14B, stating Frampton reached maximum medical improvement (MMI) on April 17, 2013, listing his diagnosis as cervical spondylosis, and assigning him a 20% impairment rating to the cervical spine. However, Dr. Bailey later revised the form to assign Frampton a 75% impairment rating to the cervical spine and a 26% whole person impairment rating.

On November 17, 2014, Frampton filed a Form 50 seeking total permanent disability benefits for the injury to his neck and right arm allegedly sustained during the dove-field accident. He denied any prior permanent disability.

In its Form 51 Answer to Request for Hearing, DNR stated, "It is [a]dmitted the employee sustained an injury or illness on or about the date set forth in the Form 50." However, DNR (1) denied any injury to Frampton's right arm; (2) denied Frampton needed or was entitled to additional medical care as a result of any work-related injury; (3) claimed Frampton reinjured his cervical spine during his June 2011 car accident and was currently being treated for that injury; and (4) stated, "[d]isability, if any, to be determined by the [Worker's Compensation Commission]." In its prehearing brief, DNR again denied Frampton was permanently and totally disabled in light of his ability to continue working without restriction and reiterated its argument that the car accident was a subsequent, intervening accident. DNR did not, however, cite § 42-9-35 or the issue of Frampton's preexisting diagnosis of cervical radiculopathy in its Form 51 or Form 58 prehearing brief.

At the beginning of Frampton's hearing, Frampton asserted that during the September 4, 2010 dove-field incident, he herniated a disc in his cervical spine, ultimately resulting in surgery and total permanent disability. DNR, however, opened the hearing by stating:

> It is our position that there is no evidence that [Frampton] sustained any additional injury or exacerbated his known preexisting condition as a result of the September 4, 2010 accident. [Frampton] has a known preexisting condition, as indicated in Dr. Bailey's records. Dr. Bailey diagnosed

him with a C6-7 radiculopathy approximately six months prior to the dove field incident. [Frampton] has a burden of proof by a preponderance of the evidence that the preexisting condition was aggravated or exacerbated. We don't believe he's met that burden of proof.

Frampton did not object to DNR framing the case this way, and the hearing continued. During the hearing, Frampton testified he was working full time but had some limitations in what he was physically able to do. He believed he had lost at least 75% use of his neck because of his ongoing pain and his limited movement; however, he confirmed he was not taking any medications at the time of the hearing for his neck.

During the hearing, the issues of Frampton's preexisting diagnosis of cervical radiculopathy and pre-dove-field visit to Dr. Bailey were extensively discussed.[2] Frampton testified he did not recall seeing Dr. Bailey before the September 4, 2010 dove-field incident or having problems in his neck or arm before the incident. However, Dr. Bailey's medical records, which were stipulated to during the hearing, did not reference a work-related injury on September 4, 2010. Rather the records indicated in March 2010, Frampton self-reported numbness in his arm beginning at least three weeks earlier in February 2010. The records also indicated in March 2010, Frampton had an MRI scan of his neck to determine the cause of the reported arm and neck pain. Frampton acknowledged he would not have gone to see Dr. Bailey in March 2010 or had an MRI scan of his neck if he was not having neck pain at that time, and he agreed that, on the intake forms, he characterized his symptoms as having begun gradually over a number of years. Frampton also acknowledged he never mentioned the September 4, 2010 dove-field incident when asked to describe his injuries to Dr. Bailey.

Frampton urged the single commissioner to find that he lost more than 50% use of his back as a result of the dove-field incident, and therefore, there was a rebuttable presumption he had a permanent and total disability. *See* S.C. Code Ann. § 42-9-30(21) (2015). "[S]ection 42-9-30(21) states there is a rebuttable presumption of [permanent and total disability] when a claimant has 50% or more loss of use of the back." *Watson v. Xtra Mile Driver Training, Inc.*, 399 S.C. 455, 464, 732 S.E.2d 190, 195 (Ct. App. 2012).

---

[2] At least ten pages of testimony from the transcript are devoted to discussion of the relationship between Frampton's preexisting diagnosis of cervical radiculopathy, the onset of neck pain and arm numbness, and the dove-field injury.

DNR argued Frampton's injury resulting from the dove-field incident was merely a cervical strain and Frampton failed to prove he aggravated his preexisting neck condition as a result of the dove-field incident pursuant to § 42-9-35. DNR also argued the June 2011 car accident was a subsequent, intervening accident, breaking any existing chain of causation between the dove-field accident and Frampton's injury, relying on *Geathers v. 3V, Inc.*, 371 S.C. 570, 579–80, 641 S.E.2d 29, 34 (2007) (holding when an employee with a preexisting but non-disabling prior injury suffers a subsequent, disabling injury that aggravates or activates the preexisting condition, compensability is limited to the second injury, not the first).

In the order following the hearing, the single commissioner found Frampton's testimony regarding the extent of his preexisting neck injury was not credible; rather, the single commissioner found Frampton suffered from preexisting neck pain and right arm numbness before his alleged September 4, 2010 work injury, citing Dr. Bailey's medical records predating the dove-field incident. The single commissioner further found there was no medical evidence the September 4, 2010 dove-field incident aggravated or exacerbated Frampton's preexisting neck condition, concluding Frampton did not meet his burden of proving a compensable disability under § 42-9-35.

Nevertheless, the single commissioner awarded Frampton disability benefits because she found DNR admitted Frampton's claim and provided medical treatment. As to the details of the award, the single commissioner found Frampton was not permanently and totally disabled but had sustained 20% permanent partial disability to his spine as a result of his September 4, 2010 dove-field work-related injury based on the evidence as a whole, including Dr. Bailey's original Form 14B assigning Frampton a 20% impairment rating to the cervical spine. The single commissioner found the June 16, 2011 car accident was not a superseding, intervening act that broke the chain of causation, finding *Geathers* inapplicable.

Both Frampton and DNR appealed the single commissioner's order. Frampton asserted the single commissioner erred in finding Frampton was not totally and permanently disabled, while DNR alleged the single commissioner erred, "in awarding medical and compensation benefits to the [Frampton] after finding and concluding that [Frampton] did not meet his burden of proof under S.C. Code Ann.§ 42-9-35[.]" At the hearing in front of the appellate panel, DNR alleged that by not appealing the single commissioner's specific factual findings and conclusions of law indicating Frampton did not meet his § 42-9-35 burden, those findings and conclusions were now the law of the case and Frampton was not entitled to disability benefits.

In its order reversing the single commissioner, the appellate panel found, according to § 42-9-35, Frampton "was required to prove, with expert medical evidence stated to a reasonable degree of medical certainty, that the alleged accident on September 4, 2010 aggravated his pre[]existing neck condition."  The appellate panel found the term "shall" in § 42-9-35 mandated that "only by meeting this statutory burden of proof may the [worker's compensation commission] properly award medical or compensation benefits to [Frampton] under the Act."  The appellate panel next found the single commissioner correctly determined Frampton did not meet his burden of proof under § 42-9-35, and finally, the appellate panel adopted DNR's argument that because Frampton did not appeal the single commissioner's finding of his failure to meet his burden of proof for compensability, it was law of the case.

## II. Standard of Review

The Administrative Procedures Act (APA) provides a reviewing court "may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . affected by other error of law [or] clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."  S.C. Code Ann. § 1-23-380(5)(d), (e) (Supp. 2019); *see also Gadson v. Mikasa Corp.*, 368 S.C. 214, 221, 628 S.E.2d 262, 266 (Ct. App. 2006) ("Pursuant to the APA, this [c]ourt's review is limited to deciding whether the appellate panel's decision is unsupported by substantial evidence or is controlled by some error of law.").  "In workers' compensation cases, the [appellate panel] is the ultimate fact finder.  An appellate court must affirm the findings made by the [appellate panel] if they are supported by substantial evidence." *Holmes v. Nat'l Serv. Indus., Inc.*, 395 S.C. 305, 308, 717 S.E.2d 751, 752 (2011) (citation omitted).  Our supreme court has defined substantial evidence as  "not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but . . . evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action." *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981) (quoting *Laws v. Richland Cty. Sch. Dist. No. 1*, 270 S.C. 492, 495–96, 243 S.E.2d 192, 193 (1978)).  "The final determination of witness credibility and the weight assigned to the evidence is reserved to the appellate panel.  Where there are conflicts in the evidence over a factual issue, the findings of the appellate panel are conclusive." *Houston v. Deloach & Deloach*, 378 S.C. 543, 551, 663 S.E.2d 85, 89 (Ct. App. 2008) (citations omitted).  "Accordingly, a reviewing court may not substitute its judgment for that of the [appellate panel] as to the weight of the evidence on questions of fact." *Clark v. Aiken Cty. Gov't*, 366 S.C. 102, 107, 620 S.E.2d 99, 101 (Ct. App. 2005).

"The claimant has the burden of proving facts that will bring the injury within the workers' compensation law, and such award must not be based on surmise, conjecture or speculation." *Crisp v. SouthCo. Inc.*, 401 S.C. 627, 641, 738 S.E.2d 835, 842 (2013) (quoting *Clade v. Champion Labs*, 330 S.C. 8, 11, 496 S.E.2d 856, 857 (1998)). "[A]n employer who has responded to a workers' compensation claim may assert a general denial of liability whether or not the response expressly contests compensability." *Hargrove v. Carolina Orthopaedic Surgery Assocs., PA*, 389 S.C. 119, 124, 697 S.E.2d 641, 643 (Ct. App. 2010). "Injury" for purposes of workers' compensation means "only injury by accident arising out of and in the course of employment." S.C. Code Ann. § 42-1-160(A) (2015); *see also Turner v. SAIIA Constr.*, 419 S.C. 98, 105, 796 S.E.2d 150, 154 (Ct. App. 2016) ("For an accidental injury to be compensable, it must "aris[e] out of and in the course of employment." (quoting § 42-1-160(A))). "An injury arises out of employment if it is proximately caused by the employment." *Id.*

## III. Discussion

Frampton argues because DNR admitted the injury and paid for some of his treatment with Dr. Bailey, the parties believed the only disputed issue at the hearing before the single commissioner would be the extent of his spinal injury and whether his arms were injured. Frampton contends DNR did not properly present § 42-9-35 as a defense because it failed to specify the statute as a defense on its Form 51 or in its prehearing brief. He further contends because DNR admitted the injury, he was not on notice he would be required to prove liability.

DNR acknowledges it admitted Frampton suffered an accident involving his cervical spine on its Form 51 but argues it also specifically denied liability for any workers' compensation benefits on the Form and in its prehearing brief. According to DNR, its admission that Frampton sustained an injury did not absolve him of his burden of proving entitlement to benefits, including his burden under § 42-9-35. DNR maintains § 42-9-35 is a statutory prerequisite to compensation benefits when there is a preexisting condition, rather than an affirmative defense. DNR argues it was not aware of Frampton's potential preexisting condition until it received Frampton's medical records on the eve of the hearing before the single commissioner, at which time it raised the issue of § 42-9-35 without objection.

A. <u>Admitted Claim</u>

§ 42-9-35 provides:

> (A) The employee shall establish by a preponderance of

the evidence, including medical evidence, that:

> (1) the subsequent injury aggravated the preexisting condition or permanent physical impairment; or
>
> (2) the preexisting condition or the permanent physical impairment aggravates the subsequent injury.
>
> (B) The commission may award compensation benefits to an employee who has a permanent physical impairment or preexisting condition and who incurs a subsequent disability from an injury arising out of and in the course of his employment for the resulting disability of the permanent physical impairment or preexisting condition and the subsequent injury.

*See also Burnette v. City of Greenville*, 401 S.C. 417, 427, 737 S.E.2d 200, 205–06 (Ct. App. 2012) ("An injured employee 'who has a permanent physical impairment or preexisting condition' may receive benefits for a subsequent work-related disability if he establishes by a preponderance of the evidence that 'the subsequent injury aggravated the preexisting condition or permanent physical impairment.'" (quoting § 42-9-35)). "The claimant's right to compensation for aggravation of a preexisting condition arises when the claimant has a dormant condition that becomes disabling because of the aggravating injury." *Murphy v. Owens Corning*, 393 S.C. 77, 86, 710 S.E.2d 454, 458 (Ct. App. 2011).

We find the appellate panel did not err in reversing the single commissioner's conclusion that Frampton's claim was admitted. While DNR admitted an injury occurred on September 4, 2010, in its Form 51 and provided initial treatment, the inquiry into compensability under the Worker's Compensation Act does not end there. First, DNR's initial provision of treatment for Frampton's injury does not estop it from later contesting its compensability under the Act. *See Dozier v. Am. Red Cross*, 411 S.C. 274, 292–93, 768 S.E.2d 222, 231–32 (Ct. App. 2014) (holding employer did not waive its right to contest the compensability of the claimant's injury by providing treatment for 728 days and explaining a finding of waiver would discourage employers from providing treatment). Next, "preexisting condition," "§ 42-9-35," and "burden of proof" are not special or affirmative defenses that must be raised in a Form 51 or be forever lost. *See* S.C. Code Ann. Regs. 67-603(C) (2012) (listing special and affirmative defenses allowed by the Act, which are forfeited if not specifically raised in a Form 51 or Form 53). Rather, we agree with the appellate

panel that when the facts of a worker's compensation case give rise to a claim that falls under § 42-9-35, it is the burden of the claimant to prove "by a preponderance of the evidence, including medical evidence, that . . . the subsequent injury aggravated the preexisting condition or permanent physical impairment; or . . . the preexisting condition or the permanent physical impairment aggravates the subsequent injury" in order to be eligible for compensation for that injury. § 42-9-35. Accordingly, we read DNR's Form 51 as a general denial of liability, and as such, we find DNR's failure to specifically raise the issue of burden of proof does not preclude Frampton from having to prove his admitted injury was compensable at his contested-case hearing. *See Hargrove*, 389 S.C. at 124, 697 S.E.2d at 643 (holding employer's failure to raise the issue of causation in its Form 51 did not preclude the commission from denying the claim on that ground; the claimant has the burden to prove compensability and employer's Form 51 was a general denial of liability).

Next, we acknowledge this case did not proceed in a typical or ideal way. The Worker's Compensation Act is designed to expedite compensation for employees who are injured on the job. *See Machin v. Carus Corp.*, 419 S.C. 527, 534, 799 S.E.2d 468, 471 (2017) ("The Workers' Compensation Act was designed to supplant tort law by providing a no-fault system focusing on quick recovery, relatively ascertainable awards, and limited litigation."(quoting *Nicholson v. S.C. Dep't of Soc. Servs.*, 411 S.C. 381, 389, 769 S.E.2d 1, 5 (2015))); *Parker v. Williams & Madjanik, Inc.*, 275 S.C. 65, 70, 267 S.E.2d 524, 526 (1980) ("The South Carolina Workmen's Compensation [Act] created a comprehensive approach to provide compensation for employees injured by accidents arising out of and in the course of their employment. The employee receives the right to swift and sure compensation; the employer receives immunity from tort actions by the employee. This quid pro quo approach to workmen's compensation has worked to the advantage of society as well as the employee and employer."). As such, the procedures in the Act and its accompanying regulations are designed so that once the Forms are completed and filed, only very narrow contested issues will proceed to a hearing—with abundant notice—so the single commissioner is able to make an expedient and fair compensation decision for both the employer and employee. *See e.g.* S.C. Code Ann. § 42-1-700 to -705 (2015) (statutes requiring the Form 50 and Form 51 be filled out with "as much specificity as possible"); S.C. Code Ann. Regs. 67-601 to -615 (2012 & Supp. 2019) (delineating detailed procedures for contested-case hearings including deadlines for raising issues, amending Forms, and requesting an adjournment of a hearing upon a showing of good cause).

In this case, although it should have been raised in the Form 50, Form 51, or the Form 58 pre-hearing briefs, the issue of Frampton's preexisting diagnosis and its

effect on the compensability of his September 4, 2010 dove-field injury was not raised until the contested-case hearing itself. It appears Dr. Bailey's deposition had been postponed, and DNR had only received Dr. Bailey's treatment records on the eve of the hearing. Once the hearing began, Frampton's claim was structured as a § 42-9-35 claim without objection, and Frampton made no motion to adjourn the hearing pursuant to S.C. Code Ann. Reg. 67-613 (Supp. 2019) for good cause or for additional discovery. *See Morgan v. JPS Automotives*, 321 S.C. 201, 203, 467 S.E.2d 457, 459 (Ct. App. 1996) (finding that when claimant entered the contested-case hearing understanding the only the issue to be determined was eligibility for temporary benefits, but the issue of disability compensation was raised, claimant's oral motion for an adjournment to retrieve additional proof of disability should have been granted). The parties may have had valid reasons, strategic or otherwise, for wanting to press forward with the hearing. The issue of the relationship of the dove-field incident and Frampton's preexisting cervical radiculopathy was discussed extensively throughout the hearing, and the single commissioner ruled on the issue. While South Carolina's Rules of Civil Procedure do not govern worker's compensation claims, we find the doctrine of trial by implied consent to be persuasive in making sense of what happened in Frampton's case, especially considering worker's compensations hearings are designed to be more informal than civil litigation. *See Fore v. Griffco of Wampee, Inc.*, 409 S.C. 360, 373, 762 S.E.2d 37, 44 (Ct. App. 2014) (finding an amendment to a Form 58 should be allowed if the amendment is made as promptly as possible even if the amendment is made within ten days of the contested-case hearing); *Lizee v. S.C. Dep't of Mental Health*, 367 S.C. 122, 130 n. 2, 623 S.E.2d 860, 864 n. 2 (Ct. App. 2005) (recognizing "the informal nature of administrative proceedings before the Commission").

Accordingly, we find the issue of whether Frampton's dove-field injury was compensable under § 42-9-35 was litigated at the hearing by implied consent, and we find no error in the appellate panel's determination that Frampton's September 4, 2010 dove-field injury claim would only be compensable under the Worker's Compensation Act if Frampton satisfied his § 42-9-35 burden of proof. *See, e.g.*, Rule 15(b), SCRCP ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."); *Fraternal Order of Police v. S.C. Dep't of Revenue*, 352 S.C. 420, 435, 574 S.E.2d 717, 725 (2002) ("In order to be tried by implied consent, the issue must have been discussed extensively at trial."); *Norwest Properties, LLC v. Strebler*, 424 S.C. 617, 625, 819 S.E.2d 154, 159 (Ct. App. 2018) ("An issue cannot be tried by implied consent when one party expressly objects."); *Holroyd v. Requa*, 361 S.C. 43, 60, 603 S.E.2d 417, 426 (Ct. App. 2004) ("Failure to object to the introduction of evidence at the time the evidence is offered

constitutes a waiver of the right to have the issue considered on appeal.").

B. Substantial Evidence

Once the appellate panel concluded Frampton's claim was a § 42-9-35 aggravation of a preexisting condition claim, the appellate panel next reversed the single commissioner's award of compensation for Frampton's September 4, 2010 dove-field injury. First, the appellate panel found Frampton did not appeal the single commissioner's finding that he failed to satisfy his § 42-9-35 burden of proof; therefore, that finding was the law of the case,[3] and second, the appellate panel found the greater weight of the evidence presented at the hearing supported the conclusion that the September 4, 2010 dove-field injury was not compensable.

We find there is substantial evidence supporting the appellate panel's decision. *See Gadson*, 368 S.C. at 221, 628 S.E.2d at 266 ("Pursuant to the APA, this [c]ourt's review is limited to deciding whether the appellate panel's decision is unsupported by substantial evidence or is controlled by some error of law."). Dr. Bailey's medical records from March 2010 and Frampton's own testimony demonstrate he had a preexisting neck condition (cervical radiculopathy) at least six months before the dove-field incident. Section 42-9-35 provides a claimant "shall establish by a preponderance of the evidence" a subsequent work-related injury aggravated a preexisting condition. Frampton did not prove the dove-field incident aggravated his preexisting neck condition and only referenced the existence of the preexisting condition when DNR presented him with Dr. Bailey's medical records at the hearing.

Nonetheless, even if Frampton had met his burden pursuant to § 42-9-35, he did not show his neck injury was proximately caused by the dove-field accident pursuant to § 42-1-160(A). *See Crisp*, 401 S.C. at 641, 738 S.E.2d at 842 ("The claimant has the burden of proving facts that will bring the injury within the workers' compensation law, and such award must not be based on surmise, conjecture or speculation." (quoting *Clade*, 330 S.C. at 11, 496 S.E.2d at 857)); *see also Turner*, 419 S.C. at 105, 796 S.E.2d at 154 ("For an accidental injury to be compensable, it must 'aris[e] out of and in the course of employment.'" (quoting §

_____

[3] Although we do not need to reach the issue of whether the single commissioner's finding that Frampton failed to meet his burden of proof is the law of his case, we express doubts the appellate panel applied the law of the case doctrine correctly in its order reversing the single commissioner. *See I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 421–22, 526 S.E.2d 716, 724 (2000) (finding the preservation requirements for appeal are applied differently according to whether or not the party prevailed below).

42-1-160(A))); *id.* ("An injury arises out of employment if it is proximately caused by the employment."). None of Dr. Bailey's medical records mention the dove-field incident. This, taken with the fact that Frampton had already seen Dr. Bailey at least six months before the incident for the same injury, is substantial evidence supporting the appellate panel's conclusion that Frampton's treatment with Dr. Bailey, including his surgery, was not causally related to the dove-field incident but was part of a long-term, ongoing course of treatment for Frampton's progressive, degenerative, disc disease, which had begun years prior. This conclusion is consistent with Frampton's own testimony before the single commissioner that he told Dr. Bailey his symptoms began gradually over a number of years and with Dr. Bailey's notes from the March 2010 visit in which he stated Frampton had a history of cervical radiculopathy.

C. <u>Return to Work</u>

Finally, we reject Frampton's argument the single commissioner erroneously considered his post-injury return to work and subsequent promotions in estimating the percentage of his impairment. This issue is unpreserved for this court's review because Frampton failed to raise it before the appellate panel, and the appellate panel made no ruling on it. *See Robbins v. Walgreens & Broadspire Servs., Inc.*, 375 S.C. 259, 266, 652 S.E.2d 90, 94 (Ct. App. 2007) (an issue not raised to the single commissioner or appellate panel is not appropriate for appellate review); *see also Harbin v. Owens-Corning Fiberglas*, 316 S.C. 423, 428, 450 S.E.2d 112, 115 (Ct. App. 1994) (arguments not raised to the appellate panel or circuit court are not preserved for appeal). Nevertheless, it is clear from the single commissioner's order that she only considered Frampton's return to work, subsequent promotions, and earning capacity in the context of determining the lack of credibility of Dr. Bailey's revised Form 14B and in determining Frampton was not entitled to benefits under S.C. Code Ann. § 42-9-10 (2015), which is not at issue.

**AFFIRMED.**

**KONDUROS, J., concurs.**

**LOCKEMY, C.J., concurring in part and dissenting in part:** I concur in part and respectfully dissent in part. I concur with the majority's finding that the single commissioner did not err by considering Frampton's post-injury return to work and subsequent promotion in determining he was not entitled to benefits under section 42-9-10. However, I would reverse the appellate panel's conclusion Frampton failed to satisfy his burden of proof under section 42-9-35 and was therefore not entitled to any benefits under the Workers' Compensation Act.

Frampton contends the appellate panel erred by requiring him to prove a compensable injury to his spine when DNR admitted liability for an injury to the cervical spine. I agree. "An appellate court may reverse a decision by the Appellate Panel if it is affected by an error of law or is clearly erroneous in view of the substantial evidence." *Harrison v. Owen Steel Co.*, 422 S.C. 132, 137, 810 S.E.2d 433, 435 (Ct. App. 2018).

Frampton alleged in his Form 50 that he suffered an injury to his neck and right arm when he was riding in a pickup truck through a dove-field in September of 2010. In its Form 51, DNR admitted that Frampton sustained an injury on the date he alleged, and it stated it admitted "an injury to the cervical spine only" but denied the extent of the injury and all other body parts, including the arms. DNR denied Frampton was entitled to additional medical care for the injury because he suffered a subsequent injury to the cervical spine on June 16, 2011. In my view, by admitting an injury to the cervical spine, DNR agreed Frampton injured his spine as alleged in his Form 50. In addition, Frampton had been under a neurosurgeon's care for several years before he filed his Form 50, and DNR had paid for much of this treatment. The neurosurgeon completed a "physician's statement" describing his assessment of Frampton's "work related injury." All of this occurred before DNR filed its Form 51 admitting injury to Frampton's cervical spine. Further, in its Form 58, DNR argued the injury Frampton suffered in the June 2011 car accident either (1) aggravated his preexisting neck condition or (2) was a subsequent, intervening accident that severed the causal relationship between the September 4, 2010 accident and the alleged disability. As the majority acknowledged, DNR did not allege Frampton had been diagnosed with a preexisting condition prior to the September 2010 accident or refer to section 42-9-35 in either form. In addition, DNR did not mention section 42-9-35 during the hearing before the single commissioner.

The single commissioner found as a fact that, although Frampton failed to satisfy his burden of proof under section 42-9-35, DNR admitted the claim and provided medical treatment. The single commissioner found Frampton suffered a 20% permanent partial disability to his back as a result of his work injury. The appellate panel did not disturb the single commissioner's finding that DNR admitted the claim, and none of DNR's grounds for appeal from the single commissioner's order charged her with error in finding the claim was admitted. In my opinion, DNR admitted the September 4, 2010 injury to Frampton's spine and the only disputed issues at the hearing before the single commissioner were the extent of the injury and whether the arms were affected. Because this was an admitted case, I would hold the appellate panel erred by concluding that, pursuant to section 42-9-35, Frampton was

required to prove that either the September 4, 2010 injury aggravated his preexisting condition or the preexisting condition aggravated the injury. Nothing in DNR's Form 51 or Form 58 notified Frampton that he would be required to show his September 4, 2010 accident aggravated a preexisting neck condition. I would therefore reverse the appellate panel's holding that Frampton was not entitled to any benefits under the Workers' Compensation Act.

Further, I believe the appellate panel misapplied the law of the case doctrine. "It is a fundamental rule of law that an appellate court will affirm a ruling by a lower court if the offended party does not challenge that ruling." *Lindsay v. Lindsay*, 328 S.C. 329, 338, 491 S.E.2d 583, 588 (Ct. App. 1997). "Failure to challenge the ruling 'is an abandonment of the issue and precludes consideration on appeal.'" *Id.* (quoting *Biales v. Young*, 315 S.C. 166, 168, 432 S.E.2d 482, 484 (1993)). "The unchallenged ruling, 'right or wrong, is the law of the case and requires affirmance.'" *Id.* (quoting *Buckner v. Preferred Mut. Ins. Co.*, 255 S.C. 159, 161, 177 S.E.2d 544, 544 (1970)). Here, notwithstanding the single commissioner determined Frampton failed to meet his burden of proof pursuant to 42-9-35, she ruled in his favor on this issue, finding DNR admitted the claim. Without expressly addressing this finding, the appellate panel relied on the law of the case doctrine to affirm the single commissioner's conclusion that Frampton failed to satisfy his burden of proof under section 42-9-35. However, there was no reason for Frampton to appeal the single commissioner's ruling as to section 42-9-35 because he prevailed on the issue. Therefore, I believe the law of the case doctrine did not apply and the appellate panel erred by relying on this doctrine to support its holding.

For the foregoing reasons, I respectfully dissent from the majority opinion and would reverse the appellate panel in part.